UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH DAWSON; JOHN NORDLUND; ALAN DENNIS VICKERY; JOHN ZIMMARO; DAVID REICHERT; ANDREW WILSON; JERALD BIRT; MARILYN CURTIS; and MICHAEL DUCHEMIN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF WASHINGTON; STATE OF WASHINGTON DEPARTMENT OF RETIREMENT SYSTEMS; and KATHRYN LEATHERS, in her official capacity as Director of the Washington Department of Retirement Systems,<br><br>Defendants. | Case No. 26-1469<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

CLASS ACTION COMPLAINT
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

**TABLE OF CONTENTS**

**Page**

I.     SUMMARY OF ACTION....................................................................................1

II.    PARTIES .......................................................................................................4

III.   JURISDICTION AND VENUE .............................................................................6

IV.    FACTUAL ALLEGATIONS .................................................................................6

       A.     The LEOFF 1 retirement plan before enactment of E2SHB 2034..........6

       B.     Investment of LEOFF Plan 1 assets..................................................7

       C.     E2SHB 2034 requires the transfer of approximately $3.3 billion or
              more from the Fund to general State funds.........................................9

       D.     The transfer of billions of dollars out of LEOFF 1 by E2SHB 2034
              imperils the the Fund. ...................................................................12

V.     CLASS ACTION ALLEGATIONS .......................................................................15

COUNT I VIOLATION OF ARTICLE I, SECTION 10 OF THE UNITED
       STATES CONSTITUTION (42 U.S.C. § 1983) ...............................................17

COUNT II VIOLATION OF ARTICLE I, § 23 OF THE WASHINGTON
       CONSTITUTION ....................................................................................18

PRAYER FOR RELIEF ...........................................................................................20

CLASS ACTION COMPLAINT - i
011370-11/3486621 V1

Plaintiffs Joseph Dawson, John Nordlund, Alan Dennis Vickery, John Zimmaro, David Reichert, Andrew Wilson, Jerald Birt, Marilyn Curtis, and Michael Duchemin, for this class action complaint, allege as follows, based upon their personal knowledge as to their own actions and upon information and belief and the investigation of their counsel as to all other allegations:

## I.    SUMMARY OF ACTION

1.    In 1969, the State of Washington passed the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, former RCW 41.26.010, *et seq.*, which created a retirement plan for the exclusive benefit of all law enforcement officers and firefighters in the State. That plan is known as the "LEOFF Plan 1" or "LEOFF 1" and provides retirement benefits for employees hired before October 1, 1997. As of June 30, 2025, approximately 5,850 members of LEOFF Plan 1 were receiving benefits and six members were not retired. LEOFF 1 was closed to new members as of October 1, 1997.

2.    The purpose of LEOFF 1 is "to provide for an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and firefighters, and to beneficiaries of such employees, thereby enabling such employees to provide for themselves, and their dependents, in case of disability or death, and effecting a system of retirement from active duty." RCW 41.26.020.

3.    All money in the LEOFF 1 Fund (the "Fund") must be used for the exclusive benefit of the members and beneficiaries. RCW 41.26.040(3) states that "[a]ll funds held by any firefighters' or police officers' relief and pension fund shall remain in that fund for the purpose of paying the obligations of the fund."

4.    Nonetheless, the State has now enacted a law designed to raid the Fund and transfer approximately $3.3 billion or more to other State funds to cover a shortfall in other areas of the State budget. The law, which is denominated Engrossed Second Substitute House Bill 2034 ("E2SHB 2034"), will terminate the LEOFF 1 plan on June 30, 2029, and replace it with a

CLASS ACTION COMPLAINT - 1
011370-11/3486621 V1



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

"Restated LEOFF" retirement system that takes on the former LEOFF 1 retirees, with the same benefits as LEOFF 1.[1]

5. E2SHB 2034 requires the state treasurer, on June 30, 2029, to "transfer to the restated law enforcement officers' and firefighters' defined benefit retirement fund an amount equal to 110 percent of the actuarial present value of the fully projected benefits of plan 1 of the Washington law enforcement officers' and firefighters' retirement system . . . ." E2SHB 2034, § 105(1). Plaintiffs and the Class members did not contract for any such transfer, let alone a transfer of amounts exceeding 110 percent of the alleged *actuarial* present value of benefits.

6. Under E2SHB 2034, "[d]uring the 2027-2029 fiscal biennium," any of that transferred money "may be transferred to the general fund." E2SHB 2034, § 112.

7. E2SHB 2034's transfer of money out of LEOFF Plan 1 and into other programs is part of an elaborate plan by the State of Washington to stave off a very serious budget shortfall. To cover budget shortfalls, E2SHB 2034 violates RCW 41.26.040(3) by requiring the transfer of approximately $3.3 billion or more out of the LEOFF Plan 1, after which the money may be transferred to the general fund during the 2027-2029 fiscal biennium.

8. E2SHB 2034 was enacted even though Washington's Office of State Actuary issued a fiscal note in March 2026, explaining that E2SHB 2034 "increases the potential of future state contributions if adverse experience occurs because, after the asset transfers to the CCA/PFSA, there will be fewer assets in the Restated LEOFF 1 Fund."[2] It also states: "Within our 2,000 economic simulations that vary investment returns, we found the portion of scenarios where a UAAL emerges by Fiscal Year (FY) 2045 increased from 5% to 40% as a result of this bill; this represents the risk of required UAAL [i.e., Unfunded Actuarial Accrued Liability] payments by the state increasing by a factor of roughly 8 (or eightfold) over this 20-year timeframe." *Id.* The fiscal note similarly states that "over the next 20 years roughly 800 of the

---

[1] The legislature approved E2SHB 2034 on March 12, 2026, and Governor Ferguson signed it into law on April 1, 2026.

[2] Michael T. Harbour, Office of the State Actuary, *Fiscal Note* (Feb. 18, 2026), available at https://fnspublic.ofm.wa.gov/FNSPublicSearch/GetPDF?packageID=77412.

CLASS ACTION COMPLAINT - 2
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

2,000 economic scenarios resulted in the emergence of a UAAL under this bill; whereas under current law, about 100 scenarios resulted in a UAAL." *Id.*

9. As the Office of State Actuary acknowledges, reducing the amounts in the Fund to approximately 110% of liabilities would put it at substantial risk of falling below 100 percent funding. The investments in LEOFF 1 are made by defendant Washington State Investment Board ("WSIB"). In 2009, the WSIB had a *negative* 22.84% return. Moreover, Allyson Tucker (who is the Chief Executive Officer of WSIB) stated in the 2025 WSIB Annual Report that "[m]arkets have become more complex, and we are seeing tectonic economic and market shifts playing out in real time." She further explained that "[w]aning global trade will have far-reaching effects on economic growth, inflation, and labor markets." Nonetheless, E2SHB 2034 severely requires the reduction of funds in the LEOFF 1 Plan to only 110% of *estimated* current obligations, without concomitant benefits for the LEOFF 1 members.

10. Despite depriving LEOFF 1 of billions of dollars and putting the benefits of all Plaintiffs and Class members at an eightfold greater risk, E2SHB 2034 nonetheless provides only, at best, a single new benefit on a handful of the LEOFF 1 members. Specifically, it vests benefits "for nonvested members upon the creation of the restated plan in section 318 of this act." *See* E2SHB 2034, § 103. Under section 318(2) of E2SHB 2034, "a member with fewer than five years of service shall, upon retirement for service, receive a monthly retirement allowance of one-twelfth of one percent of his or her final average salary for each month of service. This subsection serves to fully vest all members." Currently, a person is vested when he or she has at least five years of service credit in LEOFF Plan 1.

11. The vesting benefit under section 318 provides minuscule relief, if any, because approximately seven LEOFF 1 members currently are nonvested and *none* may be "nonvested members" once the new plan goes into effect. The overwhelming majority of LEOFF 1 members will not receive any benefit from E2SHB 2034 under any circumstances.

12. In this action under 42 U.S.C. § 1983, Plaintiffs and the Class seek a declaratory judgment that E2SHB 2034 violates the Contract Clause of the United States Constitution (article I, section 10) and the Contract Clause of the Washington Constitution (article I, § 23).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

All monies contained in the Fund are vested contractual rights possessed by the Plaintiffs and the class of LEOFF 1 plan participants and held in trust for their—and only *their*—benefit.

13.    In order to protect the benefits being received by and owed to Plaintiffs and the proposed class of LEOFF 1 retirees and beneficiaries, Plaintiffs seek—on behalf of themselves and the proposed Class—a declaration of rights and an order enjoining the State from dissipating any amounts in the Fund.

## II.    PARTIES

14.    Plaintiff Joseph Dawson is a resident of King County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was a King County Deputy Sheriff. He is the President of the LEOFF 1 Coalition, which represents interests of retired members of the LEOFF 1 retirement system. The mission of the LEOFF 1 Coalition is to protect the integrity of the LEOFF 1 Law and LEOFF 1 Retirement System Trust Fund. The Coalition is a Section 501(c)(5) non-profit and nonpartisan LEOFF 1 pension volunteer organization.

15.    Plaintiff John Nordlund is a resident of Snohomish County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was a Seattle Police Officer. He is President of the Retired Seattle Police Officers Association and is a member of the LEOFF 1 Coalition.

16.    Plaintiff Alan Dennis Vickery is a resident of King County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was a Seattle Fire Chief. He is a Board Member of the Seattle Firefighter's Pension Board.

17.    Plaintiff John Zimmaro is a resident of Mason County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was a Lacey Police Officer. He is the Vice President of the LEOFF 1 Coalition.

18.    Plaintiff David Reichert is a resident of Chelan County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was King County Sheriff. He is the Secretary of the LEOFF 1 Coalition.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

19.    Plaintiff Andrew Wilson is a resident of Chelan County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was King County Sheriff. Mr. Wilson is a current member and former President of the LEOFF 1 Coalition.

20.    Plaintiff Jerald Birt is a resident of King County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. Before retiring, he was Seattle Fire Department Assistant Chief. He is a LEOFF 1 Coalition Board Member.

21.    Plaintiff Marilyn Curtis is a resident of Thurston County and a beneficiary of the LEOFF Plan 1 currently receiving retirement benefits under the plan. She is a member of the LEOFF 1 Coalition.

22.    Plaintiff Michael Duchemin is a resident of Kitsap County and a retired member of the LEOFF Plan 1 currently receiving retirement benefits under the plan. He is the President of the Retired Firefighters of Washington, a non-profit organization that represents the interests of thousands of retired firefighters and law enforcement officers across the State of Washington. The mission of the Retired Firefighters of Washington is to preserve and enhance the pension and medical benefit features of the LEOFF retirement systems.

23.    Defendant the State of Washington Department of Retirement Systems is an agency of the State of Washington and, under RCW 41.50.055, is responsible for administering the LEOFF Plan 1. At the direction of the State, it will take the actions described below to terminate the LEOFF Plan 1 and dissipate money from the LEOFF Plan 1.

24.    Defendant Kathryn Leathers is the Director of the Washington Department of Retirement Systems.

25.    Defendant State of Washington created LEOFF 1 and, under RCW 41.45, made contributions to the Fund on behalf of LEOFF 1 participants. It passed E2SHB 2034, which Plaintiffs ask to have declared unlawful. The State, or its political subdivisions, is responsible for the operation, administration, and investment of LEOFF 1 funds.

CLASS ACTION COMPLAINT - 5
011370-11/3486621 V1



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## III.    JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction under: (1) 28 U.S.C. § 1331, because this action arises under article I, section 10 of the United States Constitution; (2) 28 U.S.C. § 1343(a)(3), because it is brought to redress deprivations, under color of state law, of rights, privileges, and immunities secured by the United States Constitution; (3) 28 U.S.C. § 1343(a)(4), in that it seeks to secure equitable relief under an Act of Congress, specifically 42 U.S.C. § 1983, which provides a cause of action for the protection of constitutional rights; and (4) 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state law claims so related to claims in an action within original jurisdiction that they form part of the same case or controversy.

27.    This Court may exercise supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367 because it is so related to the federal claim, which is within the Court's original jurisdiction, that it forms part of the same case or controversy under Article III of the United States Constitution. This case does not present novel or complex issues of state law that would predominate over claims for which this Court has federal-question jurisdiction, and there are no compelling reasons for declining supplemental jurisdiction over the state-law claim.

28.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because defendants are residents of this District and under § 1391(b)(2) because all the claims asserted by Plaintiffs arose within this judicial district.

## IV.    FACTUAL ALLEGATIONS

**A.    The LEOFF 1 retirement plan before enactment of E2SHB 2034.**

29.    In 1969, the State of Washington created a single retirement plan for the benefit of all Law Enforcement Officers and Fire Fighters (hence, the "LEOFF" acronym) by passing the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, codified at RCW 41.26, *et seq.* (the "Act").

30.    The purpose of Act was "to provide for an actuarial reserve system for the payment of death, disability, and retirement benefits to law enforcement officers and firefighters, and to beneficiaries of such employees, thereby enabling such employees to provide for themselves, and their dependents, in case of disability or death, and effecting a system of

CLASS ACTION COMPLAINT - 6
011370-11/3486621 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

retirement from active duty." RCW 41.26.020. The benefits include a pension, medical, and death or disability payments, among other things.

31.     That LEOFF Plan transferred the benefits owed under RCW 41.16, *et seq.*, RCW 41.18, *et seq.*, and RCW 41.20, *et seq.*, and consolidated these benefits in RCW 41.26, *et seq.* To avoid constitutional problems, the State guaranteed all firefighters and police officers equal—if not greater—benefits under the single LEOFF Plan and enacted RCW 41.26.040(3), which guaranteed that "[a]ll funds held by any firefighters' or police officers' relief and pension fund shall remain in that fund for the purpose of paying the obligations of the fund."

32.     The single LEOFF Plan, created in March 1970, was split into two plans in 1977 when the State closed the original LEOFF Plan to new members and created a separate plan for eligible employees hired after September 30, 1977. For those employees hired before October 1, 1977, the plan became known as the "LEOFF Plan 1" (hereinafter, the "Plan"). Thereafter, subsequent eligible employees became members of "LEOFF 2."

**B.     Investment of LEOFF Plan 1 assets.**

33.     A retirement board originally managed the Fund. RCW 41.40.030, .072 (1979).

34.     In 1981, the Legislature changed the system and created the WSIB to manage the LEOFF Plan 1 along with all other State retirement funds, medical and accident funds, and permanent trust funds.

35.     Under RCW 43.33A.170, the WSIB manages these funds in a "commingled trust fund." As trustee of the funds, the WSIB must manage them in accordance with the "prudent person" standard, RCW 43.33A.140, which is the historic standard associated with fiduciary obligations in trust contexts.

36.     Just as before the creation of WSIB, money in the Fund that WSIB oversees is held in trust for Plan members' and their beneficiaries' exclusive benefit. Defendant Washington State Department of Retirement Systems acknowledges that this is part of the historic benefit bargained for under the LEOFF Plan 1 system. The Legislature is prohibited by law from making the contemplated modifications to the LEOFF Plan 1.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

37.     State law prohibits the State from diverting any monies out of the LEOFF Plan 1 to anyone but the Plan participants.

38.     The Fund is not an asset of the State.

39.     All monies in the Fund are vested contractual rights possessed by Plaintiffs and the class of LEOFF Plan 1 participants and held in trust for their—and *only* their—benefit.

40.     All contributions made to the Fund, along with the investments and interest, are for the sole benefit of Plan participants and their beneficiaries—Plaintiffs and Class members here—and are the economic product, no matter the direct source, of the participants' services to their employers and the public.

41.     Historically, the State has recognized that interest earned on Fund assets were to be used for payment of benefits to LEOFF 1 participants. From 1971 to 1975, the Legislature directed that interest earnings be used by the LEOFF Fund to pay LEOFF benefits. Additionally, State actuarial valuations of the Fund have assumed that investment earnings would be used to pay benefits. Indeed, even before the creation of LEOFF, the State recognized that interest earned on firefighters' and police officers' pension funds were the property of the firefighters and police officers. *E.g.*, RCW 41.18.010.

42.     Equally, beginning in 1971, Washington Attorney General Opinions identify the Fund monies as monies "held in trust for the Fund's beneficiaries" that cannot be used for any purpose other than paying participants' benefits. In addition, the Attorney General's office, in 1975 Op. Atty. Gen. Wash. No. 50, found that in the context of the teachers' retirement system, in the event of any purported surplus, the only option for the trustee was to increase benefits, not reduce the benefits or the amount of money in the Fund.

43.     In 1974, the Attorney General issued an opinion that, as a result of the decision in *Bakenhus v. Seattle*, 48 Wn.2d 695, 702 (1956), pension rights may be modified "but only for the purpose of keeping the pension system flexible and maintaining its integrity." Similarly, RCW 49.52.010 declares that all employer contributions for medical, disability or death benefits are held in trust for the benefit of the employee.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

44.     Furthermore, LEOFF 1 is tax qualified under Internal Revenue Code Section 401. In order for the Plan to be tax qualified, assets of the plan must be held in trust, absent an insurance annuity contract, and such assets must be used for the "exclusive benefit of employees and their beneficiaries."

45.     Under former RCW 41.26, payment of benefits to LEOFF Plan 1 participants was the sole means of disposing of LEOFF 1 monies. RCW 41.26.040(3) required that "[a]ll funds held by any firefighters' or police officers' relief and pension fund shall remain in that fund for the purpose of paying the obligations of the fund."

46.     The State recently recognized in other legislation that money in the LEOFF Plan 1 should be used solely for the benefit of its members. Enacted in 2022, RCW 41.26.291(1) states: "Law enforcement officers' and firefighters' plan 1 active members, term-vested members, retirees, and survivors eligible for benefits under the plan 1 provisions of this chapter on June 9, 2022, shall be eligible to receive the plan 1 lump sum defined benefit of $100 per service credit month payable by January 31, 2023." And RCW 41.26.291(1)(a) states: "Members who retired for an in the line of duty disability under RCW 41.26.120 shall receive the greater of the lump sum defined benefit of $100 per service credit month or a lump sum defined benefit of $20,000." So, RCW 41.26.291 demonstrates that the State knows that money from the LEOFF Plan 1 should be used for the benefit of members of that plan.

47.     Now, however, the State has legislated to take money from the LEOFF Plan 1 in order to reduce the State's budgetary deficit, in violation of article I, section 10 of the United States Constitution, and article I, section 23 of the Washington Constitution.

**C.     E2SHB 2034 requires the transfer of approximately $3.3 billion or more from the Fund to general State funds.**

48.     Ever since LEOFF 1 was established in 1970, the law has provided that LEOFF 1 employers would pay all necessary medical services for LEOFF 1 members and retirees not payable from the other sources identified in the statute. RCW 41.26.150. This promise of funding future medical benefits was made because the State assumed the employers' obligation to fund the pre-existing pension system under RCW 41.16, RCW 41.18, and RCW 41.20, which at the

CLASS ACTION COMPLAINT - 9
011370-11/3486621 V1



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

time had an unfunded liability of about $100 million. Municipal employers have not pre-funded LEOFF 1's medical benefits and the future costs present substantial unfunded liabilities to these employers. The rights of Plaintiffs and the Class members are contractual. *See Hester v. State*, 197 Wn.2d 623 (2021). These rights may not be modified to Plaintiffs' detriment once plaintiffs retired from active duty.

49.     Nonetheless, E2SHB 2034 seeks to seize money from the Fund by ending that plan, creating a new fund for LEOFF 1 members that has only 110% of estimated obligations under the plan, and transferring approximately $3.3 billion or more entirely out of the funds for the Plaintiffs and Class members and into general state funds.

50.     Section 101 of E2SHB 2034 is titled "Legislative Findings and Declaration" and states in part that the planned "restatement of LEOFF plan 1 shall include the transfer of *actuarially sufficient resources* to ensure the satisfaction of all liabilities under LEOFF plan 1." (Emphasis added.) But E2SHB 2034 does not acknowledge that the Plaintiffs and Class members did not agree to funding only allegedly *actuarially* sufficient resources.

51.     Section 102 is titled "Restatement and Termination" and provides that "Plan 1 of the Washington law enforcement officers' and firefighters' retirement system is restated, and hereby terminated, effective June 30, 2029. During the transition between the restatement and termination and the establishment of the restated law enforcement officers' and firefighters' retirement system, all benefits, as they existed prior to termination and restatement, shall continue without interruption."

52.     Section 103 is titled "Restated Law Enforcement Officers' And Firefighters' Retirement System Established." Section 103(1) provides that the "restated law enforcement officers' and firefighters' retirement system is hereby established as provided in this chapter." Section 103(2) provides that the "restated law enforcement plan does not create benefits for members and beneficiaries different than, nor in addition to, those that existed prior to restatement and termination, with the exception of vesting benefits for nonvested members upon the creation of the restated plan in section 318 of this act." Thus, E2SHB 2034 makes explicit that the *only* new benefit conferred on members of LEOFF 1 is vesting benefits "for nonvested

CLASS ACTION COMPLAINT - 10
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

members upon the creation of the restated plan in section 318 of this act." *Id.* As discussed below, Section 318 provides vesting benefits to fewer than ten LEOFF 1 members and may not provide benefits to *anyone.*

53. Section 104 of E2SHB 2034 is entitled "Restated Law Enforcement Officers' And Firefighters' Defined Benefit Retirement Fund Established." Section 104(1) provides that the "restated law enforcement officers' and firefighters' defined benefit retirement fund is created in the custody of the state treasurer. The fund shall consist of assets transferred from the Washington law enforcement officers' and firefighters' system plan 1 retirement fund, investment earnings, and other amounts deposited to the fund." Section 104(2) provides that "[e]xpenditures from the restated law enforcement officers' and firefighters' defined benefit retirement fund may be used only for the purposes of this chapter. Only the director of retirement systems or the director's designee may authorize expenditures from the fund. No appropriation is required for expenditures."

54. Section 105 of E2SHB 2034 is entitled "Transfers of Funds." Section 105(1) states that "[o]n June 30, 2029, at the direction of the director of retirement systems, the state treasurer shall transfer to the restated law enforcement officers' and firefighters' defined benefit retirement fund an amount equal to *110 percent of the actuarial present value* of the fully projected benefits of plan 1 of the Washington law enforcement officers' and firefighters' retirement system, as identified in subsection (2) of this section." (Emphasis added.)

55. Section 105(2)(a) states that "[n]o later than December 31, 2028, the state actuary must determine the actuarial present value of fully projected benefits of plan 1 of the Washington law enforcement officers' and firefighters' retirement system on June 30, 2029, by projecting the results of the latest actuarial valuation available at the time of determination to June 30, 2029."

56. Section 105(3) provides that "[o]n June 30, 2029, the state treasurer shall transfer the remaining assets in the Washington law enforcement officers' and firefighters' system plan 1 retirement fund, after the transfer in subsection (1) of this section, into the pension surplus holding account and the remaining assets shall continue to be invested by the state investment board until otherwise directed by law."

CLASS ACTION COMPLAINT - 11
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE  (206) 623-0594 FAX

57.     Section 106 of E2SHB 2034 is entitled "Investment of Funds." Under section 106(1), the "state investment board has the full power to invest, reinvest, manage, contract, sell, or exchange investment money in (a) the restated law enforcement officers' and firefighters' defined benefit retirement fund and (b) the pension surplus holding account."

58.     Section 112 of E2SHB 2034, entitled "Pension Surplus Holding Account Established," states that the "pension surplus holding account is created in the state treasury. Moneys in the account may be spent only after appropriation. Expenditures from the account may be used only for expenditures related to implementation of this act. During the 2027-2029 fiscal biennium, money in the account may be transferred to the general fund."

59.     The *only* benefit provided to LEOFF 1 members by E2SHB 2034 is vanishingly small. Section 318(2) of E2SHB 2034 states that "[b]eginning four months after the effective date of this section, a member with fewer than five years of service shall, upon retirement for service, receive a monthly retirement allowance of one-twelfth of one percent of his or her final average salary for each month of service. This subsection serves to fully vest all members." Currently, a person is vested when he or she has at least five years of service credit in LEOFF Plan 1.

60.     The vesting benefit under section 318 provides minuscule relief, if any, because approximately seven LEOFF 1 members currently are nonvested and *none* may be "nonvested members upon the creation of the restated plan in section 318 of this act." *See* E2SHB 2034, § 103(2).

**D.     The transfer of billions of dollars out of LEOFF 1 by E2SHB 2034 imperils the the Fund.**

61.     The transfer of billions of dollars from the Fund as required by E2SHB 2034 not only violates RCW 41.26.040(3)'s requirement that all funds in LEOFF 1 "shall remain in that fund for the purpose of paying the obligations of the fund" but also exposes LEOFF 1 members to the possible loss of retirement benefits. Money in the Fund is invested by the WSIB. E2SHB 2034 leaves LEOFF 1 with only "an amount equal to 110 percent of the actuarial present value

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

of the fully projected benefits of plan 1 of the Washington law enforcement officers' and firefighters' retirement system." E2SHB 2034, § 105(1).

62. Leaving LEOFF 1 with only 110% of *projected* "actuarial" benefits imperils the fund. The WSIB reports that in 2009, it had a *negative* 22.84% return.[3] Another year like that would leave LEOFF 1 with far less than projected benefits. Moreover, the Chief Executive Officer of WSIB reported in its 2025 annual report that despite its "outstanding investment returns, over four-plus decades," its "past performance does not guarantee future results. Markets have become more complex, and we are seeing tectonic economic and market shifts playing out in real time."[4]

63. E2SHB 2034's use of actuarial projections violates rights of LEOFF 1 members, who are entitled to the use of LEOFF 1 funds *solely* to pay the obligations of the plan. *See* RCW 41.26.040(3) ("All funds held by any firefighters' or police officers' relief and pension fund shall remain in that fund for the purpose of paying the obligations of the fund."). Thus, LEOFF 1 members did *not* agree to leave only 110% of benefits funds in LEOFF 1 based on the "actuarial present value of the fully projected benefits" of the fund, as mandated by E2SHB 2034.

64. The use of actuarial estimations is inherently risky. In a "Commentary on Risk," the Washington State 2024 Actuarial Valuation states that "[i]n the course of developing our actuarial valuation we make hundreds of assumptions, such as the level of returns on future investments, rates of retirement and mortality, and the future salary growth for active members. In some cases, small changes in these assumptions or unexpected plan experience can lead to significant changes in measurements, like the calculation of a plan's contribution rates or the projection of a plan's funded status."[5]

---

[3] Washington State Legislature, *Return on Investment*, https://leg.wa.gov/studies-audits-and-reports/actuarial-reporting/pensions/supporting-information/return-on-investment/ (last visited Mar. 13, 2026).

[4] Washington State Investment Board, *2025 Forty-Fourth Annual Report* at 3 (Feb. 18, 2026), https://www.sib.wa.gov/docs/reports/annual/ar25.pdf (last visited Mar. 13, 2026).

[5] Office of the State Actuary, *Washington State 2024 Actuarial Valuation* at 8. (Aug. 2025), https://leg.wa.gov/media/v4wly3ow/2024avr.pdf.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

65.     Indeed, the Washington Office of the State Actuary issued a "fiscal note" in March 2026 about E2SHB 2034.[6] The note states says that E2SHB 2034 "increases the potential of future state contributions if adverse experience occurs because, after the asset transfers to the CCA/PFSA, there will be fewer assets in the Restated LEOFF 1 Fund." It also states: "Within our 2,000 economic simulations that vary investment returns, we found the portion of scenarios where a UAAL emerges by Fiscal Year (FY) 2045 increased from 5% to 40% as a result of this bill; this represents the risk of required UAAL [i.e., Unfunded Actuarial Accrued Liability] payments by the state increasing by a factor of roughly 8 (or eightfold) over this 20-year timeframe." The fiscal note similarly states that "over the next 20 years roughly 800 of the 2,000 economic scenarios resulted in the emergence of a UAAL under this bill; whereas under current law, about 100 scenarios resulted in a UAAL."

66.     The eightfold increase in risk to Plaintiffs and the Class members—increasing the risk from five percent to 40 percent—shows that E2SHB 2034 is an unconstitutional violation of the contract rights of Plaintiffs and the Class members. Instead of being protected by money in their fund, plan members will have to rely on the State to fund the shortfalls in 800 out of 2,000 scenarios calculated by the Office of the State Actuary.

67.     Given that the State is reneging on its promises by enacting E2SHB 2034 and thus violating the Washington and United States Constitutions, Plaintiffs and Class members cannot be expected to rely on the State to fund the very real possibility of shortcomings. Plaintiffs and Class members did not contract for an actuarial estimation of their projected benefits or for the transfer of all funds above 110% of that estimated amount. Instead, they have a contractual right to the use of *all* funds in LEOFF 1 solely for their benefit.

68.     E2SHB 2034 threatens the contractual rights of Plaintiffs and the Class members in yet another respect. Section 111 of E2SHB 2034 is entitled "Study of Pension Boards and Medical Liability." Local governments currently have the responsibility of paying medical costs under LEOFF 1 for their former employees. But section 111(1) states that the "select committee

---

[6] *Fiscal Note*, *supra* note 2.

CLASS ACTION COMPLAINT - 14
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

on pension policy shall study the administration of pension boards and medical benefit liabilities of the law enforcement officers' and firefighters' retirement system plan 1." Section 111(2) then provides that the "study must evaluate options for the state to assume responsibility of pension board administration and for the associated financial liabilities." The "select committee on pension policy shall submit a report of its findings and recommendations to the fiscal committees of the legislature by December 31, 2028." E2SHB 2034, § 111(4). Any such transfer would violate the rights of Plaintiffs and the Class members, so the planned study should be struck down as unlawful.

## V.   CLASS ACTION ALLEGATIONS

69.    Plaintiffs bring their claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

70.    *Class Definition*. The proposed Class, of which Plaintiffs are members, is defined as all LEOFF 1 participants and their designated beneficiaries who receive benefit payments from LEOFF 1. Excluded from the proposed Class are LEOFF 1 participants who are actively employed as a deputy sheriff, police officer, or firefighter.

71.    *Numerosity*. Of the approximate 5,850 members and beneficiaries of LEOFF 1, about 5,845 are presently receiving benefit payments. The members of the Class are, therefore, so numerous that joinder of all members is impractical.

72.    *Common Questions of Fact and Law Exist*. Common questions of law and fact exist as to all members of the Class. These common legal and factual questions include:

    a.    Whether, as alleged, all monies contained in the Fund are vested contractual rights possessed by the Plaintiffs and the class of LEOFF 1 plan participants and held in trust for their—and *only* their—benefit;

    b.    Whether all contributions to the Fund, along with the interest accrued thereon, is for the sole benefit of the Plan participants and their beneficiaries—Plaintiffs and Class members here—and is the economic product, no matter the direct source, of the participants' services to their employers and the public;

CLASS ACTION COMPLAINT - 15
011370-11/3486621 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

      c.     Whether RCW 41.26.040(3)'s requirement that all LEOFF 1 funds "shall remain in [the] [F]und for purposes of paying the obligations of the [F]und" precludes defendants from redirecting the money to another purpose or raiding the Fund and transferring money to the State's general fund;

      d.     Whether RCW 49.52.010 requires all LEOFF 1 employers' contributions for medical, disability or death benefits be held in trust for the benefit of the LEOFF 1 employees;

      e.     Whether the diversion of money from the Fund violates article I, section 10 of the United States Constitution, and article I, section 23 of the Washington Constitution; and

      f.     The appropriate form of injunctive, declaratory and other relief.

73.    *Typicality*. Plaintiffs' claims are typical of the claims of Class members because Plaintiffs and all Class members receive benefits from LEOFF 1 and have a property interest in all monies in the Fund.

74.    *Adequacy*. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of members of the Class.

75.    **Fed. R. Civ. P. 23(b)(2) Certification**. The Class may be certified under Rule 23(b)(2) because:

      a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for defendants;

      b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a

CLASS ACTION COMPLAINT - 16
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.   Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I

### VIOLATION OF ARTICLE I, SECTION 10 OF THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

76.   Plaintiffs reassert and incorporate all allegations in the preceding paragraphs.

77.   Under article I, section 10 of the United States Constitution, E2SHB 2034 is an unconstitutional impairment of Plaintiffs' and Class members' employment contract.

78.   Pension and other retirement plans are unique contractual rights and in essence deferred compensation. Any interference with these rights by the State constitutes a taking.

79.   LEOFF funds are held in trust and are to be used for the exclusive benefit of plan participants.

80.   Once an employee begins work his or her employee plan may only be modified under limited circumstances without members' consent: (1) to keep the system flexible; and (2) to maintain the fund's integrity. If there is a disadvantageous modification, there must be a corresponding benefit of equal value. Where a change is disadvantageous, an employee will be presumed not to have consented to the change. The changes in LEOFF 1 are disadvantages, not offset by equal advantage, and are not consented to by LEOFF 1 plan participants.

81.   Plaintiffs, therefore, seek a declaration that:

a.   The Contract Clause of the United States Constitution requires that all monies in the Fund  shall remain in the Fund for purposes of paying the obligations of the Fund—benefits to Plaintiffs and Class members—and that, therefore, the State is prohibited from terminating the Plan and redirecting any Fund monies to serve another purpose.

CLASS ACTION COMPLAINT - 17
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

      b.    All monies in the Fund  are vested pursuant to contractual rights of Plaintiffs and Class members and are held in trust for the exclusive benefit of LEOFF 1 members and their beneficiaries and that, therefore, the Legislature is prohibited from redirecting any money in the Fund to any use other than benefits for LEOFF 1 members and their beneficiaries without the consent of Plaintiffs and the Class.

      c.    Any purported surplus in the Fund may be disbursed only in the form of increased benefits to LEOFF 1 members in accordance with RCW 41.26, *et seq.*, and RCW 45.010(4).

      d.    Any State action of directing money in the Fund to anything other than payment of benefits to Plaintiffs and the Class, such as sought in E2SHB 2034, is an unconstitutional impairment of their employment contracts under article I, section 10 of the United States Constitution.

      e.    The Fund is an express trust created for the exclusive benefit of LEOFF 1 members and beneficiaries.

82. The purpose of the Uniform Declaratory Judgment Act is to resolve disputes by obtaining a declaration of rights before a cause of action accrues.

83. An actual, present and existing dispute, or the mature seeds of one, exists between the parties having genuine and opposing interests.

84. The interests involved are direct and substantial, amounting to over $500 million in accrued Fund assets.

85. A judicial determination of the rights of the parties will be final and conclusive.

## COUNT II

## VIOLATION OF ARTICLE I, § 23 OF THE WASHINGTON CONSTITUTION

86. Plaintiffs reassert and incorporate all allegations in the preceding paragraphs.

87. E2SHB 2034 is an unconstitutional impairment of Plaintiffs' and Class members' employment contract under article I, § 23, of the Washington Constitution.

CLASS ACTION COMPLAINT - 18
011370-11/3486621 V1

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

88.   Pension and other retirement plans are unique contractual rights and in essence deferred compensation. Any interference with these rights by the State constitutes a taking.

89.   LEOFF funds are held in trust and are to be used for the exclusive benefit of plan participants.

90.   Once an employee begins work his or her employee plan may only be modified under limited circumstances without members' consent: (1) to keep the system flexible; and (2) maintain the fund's integrity. Further, if there is a disadvantageous modification, there must be a corresponding benefit of equal value. Where a change is disadvantageous, an employee will be presumed not to have consented to the change. The changes in LEOFF 1 are disadvantages, not offset by equal advantage, and are not consented to by LEOFF 1 plan participants.

91.   Plaintiffs, therefore, seek a declaration that:

a.   Article I, § 23, of the Washington Constitution requires that all monies in the Fund shall remain in the Fund for purposes of paying the obligations of the Fund—benefits to Plaintiffs and Class members—and that, therefore, the State is prohibited from terminating the Plan and redirecting any Fund money to serve another purpose.

b.   All monies in the Fund are vested pursuant to contractual rights of Plaintiffs and Class members and are held in trust for the exclusive benefit of LEOFF 1 members and their beneficiaries and that, therefore, the Legislature is prohibited from redirecting any money in the Fund to any use other than benefits for LEOFF 1 members and their beneficiaries without the consent of Plaintiffs and the Class.

c.   Any State action directing money from the Fund to anything other than payment of benefits to Plaintiffs and the Class, such as sought in E2SHB 2034, is an unconstitutional impairment of their employment contracts under article I, § 23, of the Washington Constitution.

d.   The Fund is an express trust created for the exclusive benefit of LEOFF 1 members and beneficiaries.

CLASS ACTION COMPLAINT - 19
011370-11/3486621 V1



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

92.     The purpose of the Uniform Declaratory Judgment Act is to resolve disputes by obtaining a declaration of rights before a cause of action accrues.

93.     An actual, present and existing dispute, or the mature seeds of one, exists between the parties having genuine and opposing interests.

94.     The interests involved are direct and substantial, amounting to over $500 million in accrued Fund assets.

95.     A judicial determination of the rights of the parties will be final and conclusive.

## PRAYER FOR RELIEF

Plaintiffs respectfully request an Order providing for:

A.     Certification of the proposed Class, with the cost of notice charged to Defendants, certification of the named Plaintiffs as Class representatives, and certification of their counsel as attorneys for the Class under Fed. R. Civ. P. 23;

B.     The declaratory and injunctive relief set forth in Counts I and II above;

C.     Attorneys' fees and costs as permitted by law; and

D.     Any other and further relief the Court deems just and equitable.


Dated: April 30, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

By: */s/ Craig R. Spiegel*
Craig R. Spiegel
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
craigs@hbsslaw.com

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

CLASS ACTION COMPLAINT - 20
011370-11/3486621 V1

By: */s/ Moses Jehng*
Moses Jehng
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
moses.jehng@hbsslaw.com

*Attorneys for Plaintiff(s)*

CLASS ACTION COMPLAINT - 21
011370-11/3486621 V1

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX