The Honorable Jamal N. Whitehead

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

JOSEPH DAWSON; JOHN NORDLUND; ALAN DENNIS VICKERY; JOHN ZIMMARO; DAVID REICHERT; ANDREW WILSON; JERALD BIRT; MARILYN CURTIS; and MICHAEL DUCHEMIN, individually and on behalf of all others similarly situated,

       Plaintiffs,

  v.

KATHRYN LEATHERS, in her official capacity as Director of the Washington Department of Retirement Systems, and MIKE PELLICCIOTTI, in his official capacity as Washington State Treasurer,

       Defendants.

NO. 2:26-cv-01469-JNW

DEFENDANTS' MOTION TO DISMISS

NOTE ON MOTION CALENDAR: August 18, 2026

ORAL ARGUMENT REQUESTED

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

　　A.   Creation of the LEOFF 1 System ......................................................... 2

　　B.   LEOFF 1 Benefits and Funding Sources .............................................. 3

　　C.   LEOFF 1 Trust Fund Surplus ............................................................... 4

　　D.   The Legislature's Response: E2SHB 2034 .......................................... 5

　　E.   Procedural History ................................................................................. 7

III. LEGAL STANDARD ......................................................................................... 8

IV.  ARGUMENT ....................................................................................................... 9

　　A.   Plaintiffs Cannot Establish Justiciability under Article III ................. 9

　　　　1.   Plaintiffs lack standing, and their claim is not constitutionally ripe ................................................. 10

　　　　2.   This case is not prudentially ripe ............................................ 11

　　B.   Plaintiffs' Contracts Clause Claim Fails as a Matter of Law ............ 12

　　　　1.   E2SHB 2034 does not impair annuitants' contractual right to their defined benefits ...................................... 13

　　　　2.   Plaintiffs have no right to the surplus investment earnings of the LEOFF 1 plan .......................... 15

　　　　3.   Exclusive benefit provisions do not prevent the reversion of surplus assets to the State ........................... 18

　　　　4.   Plaintiffs' reliance on Wash. Rev. Code § 41.26.040(3) is misplaced ............................................... 19

　　　　5.   E2SHB 2034 is drawn in an appropriate and reasonable way to advance a significant and legitimate purpose ........... 21

V.   CONCLUSION .................................................................................................. 22

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

i

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

# TABLE OF AUTHORITIES

## Cases

*Adams v. City of Seattle*,
294 P.3d 774 (Wash. App. 2013) ........................................................................ 2, 3

*Anderson v. Holder*,
673 F.3d 1089 (9th Cir. 2012) ................................................................................ 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................. 8

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*,
10 F.4th 937 (9th Cir. 2021) ................................................................................ 11

*Bakenhus v. Seattle*,
296 P.2d 536 (Wash. 1956) .................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................. 8

*Borst v. Chevron Corp.*,
36 F.3d 1308 (5th Cir. 1994) .......................................................................... 15, 18

*Cetacean Cmty. v. Bush*,
386 F.3d 1169 (9th Cir. 2004) ................................................................................ 8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ................................................................................ 8

*Dreiling v. American Express Co.*,
458 F.3d 942 (9th Cir. 2006) .................................................................................. 9

*Harley v. Minn. Mining & Mfg. Co.*,
284 F.3d 901 (8th Cir. 2002) ................................................................................ 11

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999)........................................................................................... 15, 16

*Johnson v. Georgia-Pacific Corp.*,
19 F.3d 1184 (7th Cir. 1994) ................................................................................ 16

*Koster v. City of Davenport*,
183 F.3d 762, 767 (8th Cir. 1999) ........................................................................ 15

*Lee v. Verizon Commc'ns, Inc.*,
837 F.3d 523 (5th Cir. 2016) ................................................................................ 11

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

ii

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)............................................................................................. 10

*Malia v. Gen. Elec. Co.*,
  23 F.3d 828 (3d Cir. 1994) ................................................................................. 16

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) ............................................................................... 9

*Outzen v. Fed. Deposit Ins. Corp.*,
  948 F.2d 1184 (10th Cir. 1991) ......................................................................... 16

*Perelman v. Perelman*,
  919 F. Supp. 2d 512 (E.D. Pa. 2013) ................................................................. 11

*Renne v. Geary*,
  501 U.S. 312 (1991)............................................................................................. 8

*Ret. Pub. Emps. Council of Wash. v. Charles*,
  62 P.3d 470 (Wash. 2003) ................................................................................. 14

*Robertson v. Kulongoski*,
  466 F.3d 1114 (9th Cir. 2006) ........................................................................... 13

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ...................................................................... 8, 12

*Sveen v. Melin*,
  584 U.S. 811 (2018)..................................................................................... passim

*Swartz v. KPMG*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................... 7

*Trump v. New York*,
  141 S. Ct. 530 (2020)......................................................................................... 10

*Twitter, Inc. v. Paxton*,
  56 F.4th 1170 (9th Cir. 2022) ........................................................................... 11

*W. Mining Council v. Watt*,
  643 F.2d 618 (9th Cir. 1981) ............................................................................... 8

*Washington-Baltimore Newspaper Guild Loc. 35 v. Wash. Star Co.*,
  555 F. Supp. 257 (D.D.C. 1983)............................................................... 16, 18, 21

*Wilson v. Bluefield Supply Co.*,
  819 F.2d 457 (4th Cir. 1987) ............................................................................. 16

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ........................................................................... 11

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

## Constitutional Provisions

U.S. Const. art. I, § 10 ............................................................................ 8, 9, 12

U.S. Const. art. III, § 2, cl. 1 ...................................................................... 1, 8, 9

## Statutes

26 U.S.C. § 401(a)(2) .................................................................................. 6, 18

1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209 ......................................... passim

1977 Wash. Sess. Laws, 1st Ex. Sess., ch. 294 ............................................... 3

1981 Wash. Sess. Laws, ch. 3 ......................................................................... 4

2000 Wash. Sess. Laws, 2d Spec. Sess., ch. 1 ............................................... 4

2025 Wash. Sess. Laws, ch. 424 ..................................................................... 5

Law Enforcement Officers' and Fire Fighters' Retirement System,
    2026 Wash. Sess. Laws, ch. 261 ........................................................... passim

Wash. Rev. Code 41.16 ........................................................................... 2, 19, 20

Wash. Rev. Code 41.18 ........................................................................... 2, 19, 20

Wash. Rev. Code 41.20 ........................................................................... 2, 19, 20

Wash. Rev. Code § 41.26.040 ...................................................................... 20

Wash. Rev. Code § 41.26.040(1) .................................................................... 3

Wash. Rev. Code § 41.26.040(2) .................................................................... 2

Wash. Rev. Code § 41.26.040(3) ............................................................. passim

Wash. Rev. Code § 41.26.080 ........................................................................ 4

Wash. Rev. Code § 41.26.080(2) .................................................................... 4

Wash. Rev. Code § 41.26.100 ........................................................................ 3

Wash. Rev. Code § 41.26.110 ........................................................................ 3

Wash. Rev. Code § 41.26.130 ........................................................................ 3

Wash. Rev. Code § 41.26.150 ........................................................................ 3

Wash. Rev. Code § 41.26.160 ........................................................................ 3

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

iv

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

Wash. Rev. Code § 41.26.161 .................................................................. 3

Wash. Rev. Code § 41.26.240 .................................................................. 3

Wash. Rev. Code § 41.50.135(2) ............................................................. 17

**Rules**

Fed. R. Civ. P. 12(b) .............................................................................. 8

**Regulations**

26 C.F.R. § 1.401(b)(1) ........................................................................... 6

26 C.F.R. § 1.401-2(a) ........................................................................... 18

26 C.F.R. § 1.401-2(b)(1) ...................................................................... 18

Internal Revenue Code § 401(a) .............................................................. 6

Wash. Admin. Code § 415-02-756 .......................................................... 18

Wash. St. Reg. 10-24-099 (filed Dec. 1, 2010) ..................................... 18

**Other Authorities**

Michael T. Harbour, Fiscal Note (Feb. 18, 2026),
    https://fnspublic.ofm.wa.gov/FNSPublicSearch/
    GetPDF?packageID=77412 ................................................................ 7

Office of the State Actuary, Fiscal Note (April 16, 2026),
    https://fnspublic.ofm.wa.gov/FNSPublicSearch/
    GetPDF?packageID=77672 ................................................................ 7

Office of the State Actuary,
    *Washington State 2024 Actuarial Valuation* (Aug. 2025),
    https://leg.wa.gov/media/v4wly3ow/2024avr.pdf ................................... 5

Substitute H.B. 2034,
    69th Leg., Reg. Sess. (Wash. 2025),
    https://app.leg.wa.gov/billsummary/?
    BillNumber=2034&Year=2025&Initiative=false ................................... 5

Substitute S.B. 5085,
    69th Leg., Reg. Sess (Wash. 2025),
    https://lawfilesext.leg.wa.gov/biennium/2025-26/
    Pdf/Bills/Senate%20Bills/5085-S.pdf?q=20260720155156 ................... 5

Wash. State Leg., Select Comm. on Pension Pol'y,
    *LEOFF 1 Study: Final Report* (Nov. 18, 2025),
    https://leg.wa.gov/media/y4fbb1yy/leoff1study-withattachments.pdf .......... passim

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

v

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

## I.   INTRODUCTION

This case concerns a significantly overfunded legacy public pension plan for law enforcement officers and firefighters employed in Washington State in the 1970s, commonly referred to as "LEOFF 1." LEOFF 1 is a defined benefit plan, meaning members and beneficiaries are entitled only to their monthly benefit payments. They are not entitled to the investment returns, and they do not bear the risk for investment losses. Throughout the life of the plan, the State has borne the responsibility of making contributions to eliminate its underfunded actuarial accrued liability (UAAL). As a result, approximately eighty percent of the fund's contributions have come from State general fund appropriations. The State's efforts were successful—so successful that plan members and employers have not had to make any contributions for more than a quarter century. The plan is now 160% funded and is projected to reach well over 200% funding by 2029.

Federal tax regulations permit plan sponsors to terminate defined benefit plans and, after funding all plan liabilities, revert surplus investment income to the sponsor. The State Legislature enacted such a change here. In 2029, the challenged law will terminate LEOFF 1, restate a new plan with identical benefits, transfer sufficient assets to fund the new plan at 110%, revert surplus assets to the State, and require the State to make additional contributions if the plan later becomes underfunded. It also requires the State to consult the Internal Revenue Service and, if necessary, amend the plan or return the reverted assets to the restated plan with interest.

Plaintiffs fail to show justiciability under Article III. The relevant provisions of the challenged law will not become effective for nearly three years, on June 30, 2029. Review of the law is premature, as it expressly contemplates it may be amended before then to comply with Internal Revenue Service guidance. Nor will Plaintiffs be harmed by the new law, as it requires the restated fund to be *overfunded*—and, if necessary, buoyed by additional state contributions to retain full funding. Speculations about the possible effects of the law—if it

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

1

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

remains unamended, if equity markets substantially underperform, if the State shirks its legal obligations to contribute, and ultimately, if the State takes the unprecedented step of defaulting on benefit payments—are too attenuated to create a case or controversy that this Court may adjudicate.

And even if the Court had jurisdiction, Plaintiffs have no claim to surplus investment returns on the assets that secure their retirement benefits. They are entitled to a defined benefit and a plan actuarially designed to meet its liabilities—nothing more, nothing less. Because the restated plan will not impact these things, their constitutional claim fails.

This Court should dismiss the Amended Complaint.

## II.    BACKGROUND

### A.    Creation of the LEOFF 1 System

In 1969, the Washington State Legislature passed the Washington Law Enforcement Officers' and Fire Fighters' (LEOFF) Retirement System Act to establish a single statewide system in place of municipal police and firefighter pension plans that had been established under prior laws (e.g., Wash. Rev. Code 41.16, 41.18, and 41.20). 1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209 (creating LEOFF plan, codified as Wash. Rev. Code 41.26); *see Adams v. City of Seattle*, 294 P.3d 774, 776 (Wash. App. 2013); Dkt. # 9 at p. 3 ¶ 1.

When this statute took effect on March 1, 1970, firefighters and law enforcement officers who were then participating in existing pension plans were mandatorily transferred to LEOFF. Wash. Rev. Code § 41.26.040(2). But the transferred firefighters and law enforcement officers remained entitled to benefits under their old plans to the extent that such benefits were more generous than LEOFF's. *See id*. Already-retired officers and firefighters were not transferred; instead, they remained enrolled in their local retirement plans. *See id*.; Wash. State Leg., Select Comm. on Pension Pol'y, *LEOFF 1 Study: Final Report* 7 (Nov. 18, 2025), https://leg.wa.gov/media/y4fbb1yy/leoff1study-withattachments.pdf (LEOFF 1 Study). The LEOFF Act required those plans to retain all funds they then held to pay their obligations to

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

2

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

retirees in those legacy plans, and it required the cities that ran them to continue funding them. Wash. Rev. Code § 41.26.040(3).

All firefighters and law enforcement officers who were first employed after March 1, 1970, were enrolled in LEOFF. Wash. Rev. Code § 41.26.040(1). In 1977, the original LEOFF plan was closed to new members and became known as LEOFF 1; subsequently hired employees became members of the Law Enforcement Officers' and Firefighters' Retirement System Plan 2 (LEOFF 2). *See Adams*, 294 P.3d at 776 n.4; Dkt. # 9 at pp. 3, 9 ¶¶ 1, 29; 1977 Wash. Sess. Laws, 1st Ex. Sess., ch. 294, §§ 1–2, 17, 18 (law splitting LEOFF into two plans and closing LEOFF 1 to new members).[1]

**B.      LEOFF 1 Benefits and Funding Sources**

LEOFF 1 provides defined retirement benefits to law enforcement officers and firefighters employed by cities, counties, and special districts. *See* Dkt. # 9 at pp. 3, 9 ¶¶ 2, 27. Specifically, LEOFF 1 provides members with a defined monthly allowance at retirement using formulae based on (i) years of service, (ii) final average salary/compensation, and (iii) a multiplier. *See* Wash. Rev. Code §§ 41.26.100 (monthly allowance upon retirement from service calculation), .130 (monthly allowance upon retirement for disability). Qualifying surviving spouses of deceased members also receive a monthly defined benefit. Wash. Rev. Code §§ 41.26.160–.161. In addition, LEOFF 1 members and beneficiaries (collectively, "annuitants") receive a fully indexed cost-of-living adjustment, which adjusts benefits without a cap on increases. *See* Wash. Rev. Code § 41.26.240. Members of LEOFF 1 also receive medical benefits, which are paid by local government employers and administered by local disability boards. *See* Wash. Rev. Code § 41.26.110, .150. These medical benefits, unlike the other retirement benefits, are *not* paid from the LEOFF 1 fund. *See id.*; LEOFF 1 Study, at 4.

---

[1] Paragraph 1 of Plaintiffs' Amended Complaint erroneously states that LEOFF 1 closed to new members in 1997. Paragraph 29 states the correct closing date in 1977.

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

3

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

LEOFF 1 has been funded by appropriations from the State of Washington as well as contributions from local government employers and employees. Wash. Rev. Code § 41.26.080; Dkt. # 9 at p. 10 ¶ 36 (referencing contributions). Initially, LEOFF 1 was created with a funding policy that required contributions of six percent of active member pay from members and six percent of active member pay from employers, while the State took on the responsibility for paying the underfunded actuarial accrued liability (UAAL). 1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209, §§ 4(5), 8 (requiring Legislature to make the necessary appropriation to fund LEOFF 1's unfunded liability from the state general fund); *see also* LEOFF 1 Study, at 7, 33 (LEOFF 1 fund originated with a mere $11.4 million in assets transferred from state retirement systems and a UAAL of nearly $240 million).

Contributions have been placed in a commingled trust fund along with assets from other state retirement systems. Dkt. # 9 at p. 9 ¶ 32. The Washington State Investment Board (WSIB) manages and invests the commingled trust fund assets. Dkt. # 9 at p. 9 ¶¶ 31–32; 1981 Wash. Sess. Laws, ch. 3, § 28. About eighty percent of the total contributions made to LEOFF 1 fund have been provided from the State General Fund, with the other twenty percent being evenly divided between employers and employees. *See* Law Enforcement Officers' and Fire Fighters' Retirement System, 2026 Wash. Sess. Laws, ch. 261, § 101; *see* LEOFF 1 Study, at 8–9 (historic contributions by source, 1971–2000).

**C.    LEOFF 1 Trust Fund Surplus**

Near the end of the 1990s, LEOFF 1 became fully funded—that is, its expected returns were sufficient to cover future liabilities. *See* LEOFF 1 Study, at 10. As a result of LEOFF 1 reaching fully funded status, the Legislature suspended state, employer, and employee contributions to LEOFF 1. No member or employer contributions have been required since June 30, 2000. *See* 2000 Wash. Sess. Laws, 2d Spec. Sess., ch. 1, § 907; Wash. Rev. Code § 41.26.080(2). As of 2024, LEOFF 1 was 160% funded and had an expected surplus of $2.5 billion, with approximately 6,000 annuitants and six active members remaining on the plan.

DEFENDANTS' MOTION TO DISMISS    4
NO. 2:26-cv-01469-JNW

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

*See* 2026 Wash. Sess. Laws, ch. 261, § 101; LEOFF 1 Study, at 14; Office of the State Actuary, *Washington State 2024 Actuarial Valuation* 21 (Aug. 2025), https://leg.wa.gov/media/v4wly3ow/2024avr.pdf. At the end of the 2027–29 fiscal biennium, LEOFF 1 is projected to reach more than 200% of full funding. 2026 Wash. Sess. Laws, ch. 261, § 101.

During the 2025–2026 legislative cycle, the Legislature considered bills related to the expected surplus. *See* Substitute H.B. 2034, 69th Leg., Reg. Sess. (Wash. 2025), https://app.leg.wa.gov/billsummary/?BillNumber=2034&Year=2025&Initiative=false; Substitute S.B. 5085, 69th Leg., Reg. Sess (Wash. 2025), https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/Senate%20Bills/5085-S.pdf?q=20260720155156. The Legislature commissioned the Select Committee on Pension Policy to study and report on the tax, legal, actuarial, pension policy, and administrative implications of these two bills. *See* 2025 Wash. Sess. Laws, ch. 424, § 107. The select committee released its study on November 18, 2025. *See* LEOFF 1 Study.

**D.     The Legislature's Response: E2SHB 2034**

After the 2025 study was completed, the Legislature passed, and the Governor signed, Engrossed Second Substitute House Bill (E2SHB) 2034. *See* 2026 Wash. Sess. Laws, ch. 261, https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/Session%20Laws/House/2034-S2.SL.pdf#page=1. Effective June 30, 2029, the bill will terminate LEOFF 1 and establish a restated LEOFF retirement system, without any interruption or changes to member benefits. 2026 Wash. Sess. Laws, ch. 261, §§ 102–103; *see* Dkt. # 9 at p. 12–13 ¶¶ 47–48 (discussing these provisions). The law requires the State Treasurer to transfer to the restated LEOFF fund an amount equal to 110% of the actuarial present value of the fully projected benefits, based on calculations performed by the Office of the State Actuary (OSA). 2026 Wash. Sess. Laws, ch. 261, §§ 104–105; Dkt. # 9 at p. 13 ¶¶ 49–52 (discussing these provisions). The remaining assets will be transferred by the State Treasurer to a pension surplus holding account, from

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

5

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

which they may be transferred to the State General Fund only pursuant to appropriation. *See* 2026 Wash. Sess. Laws, ch. 261, §§ 104–105, 112. The law also provides for immediate vesting of the handful of remaining terminated, nonvested members of LEOFF 1 prior to the transfer. 2026 Wash. Sess. Laws, ch. 261, § 318; *see* Dkt. # 9 at p. 14 ¶¶ 55–56 (discussing E2SHB 2034 § 318).

Under the statute, the new restated LEOFF plan will be overfunded from the outset. But the law also requires the State to make contributions if the fund is later projected to be underfunded. Specifically, if the State Actuary determines that a UAAL exists in the restated LEOFF system, the Pension Funding Council must adopt a state contribution to the restated LEOFF system to fully amortize the UAAL over reasonable periods using reasonable actuarial assumptions and methods. 2026 Wash. Sess. Laws, ch. 261, § 502.

The Legislature also has directed the Department of Retirement Systems to seek appropriate guidance from the Internal Revenue Service (IRS) to ensure the plan's continued compliance as a qualified governmental pension plan under Internal Revenue Code Section 401(a). 2026 Wash. Sess. Laws, ch. 261, §109. This includes satisfying the exclusive benefit requirements under 26 U.S.C. Section 401(a)(2), which provides that for a plan to be qualified it must be "impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be . . . used for, or diverted to, purposes other than for the exclusive benefit of the employees or their beneficiaries." *See also* 26 C.F.R. § 1.401(b)(1) (intent and purpose of § 401(a)(2) "is to permit the employer to reserve the right to recover at the termination of the trust" surplus assets arising from "erroneous actuarial computations during the previous life of the trust"). If the IRS concludes that legislative changes are needed for the restated LEOFF plan to remain a qualified governmental pension plan, the law provides the Legislature an opportunity to make changes. 2026 Wash. Sess. Laws, ch. 261, § 109(2). And if surplus funds have been turned

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

6

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

over to the State and must be returned to comply with IRS requirements, "those funds must be reverted with interest." 2026 Wash. Sess. Laws, ch. 261, § 109(3).

During the legislative process, the Office of the State Actuary provided fiscal notes. *See* Dkt. # 9 at p. 4–5 ¶ 8 (citing Michael T. Harbour, Fiscal Note (Feb. 18, 2026), https://fnspublic.ofm.wa.gov/FNSPublicSearch/GetPDF?packageID=77412.[2]   The OSA's fiscal note for the final, enacted version of the bill states that, after the transfer of funds to the restated LEOFF plan on June 30, 2029, the bill is expected to result in an additional asset transfer of an estimated $3.9 billion from the LEOFF 1 trust fund to the pension surplus holding account (PSHA), if all OSA assumptions are realized. Office of the State Actuary, *Fiscal Note* 3 (April 16, 2026), https://fnspublic.ofm.wa.gov/FNSPublicSearch/GetPDF?packageID=776 72.

The OSA expects the restated LEOFF system to remain fully funded if all its assumptions are realized and not to require that the State make UAAL contributions. *Id*. The OSA Fiscal Note states that, within its 2,000 economic simulations that vary investment returns, the portion of scenarios where a UAAL emerges by fiscal year 2045 will increase from 5% to 40% as a result of this bill. *Id*. The OSA Fiscal Note does not express any uncertainty about the State's ability to make UAAL payments, if required to do so.

**E.    Procedural History**

On April 30, 2026, Plaintiffs filed an action naming the State of Washington, the State of Washington Department of Retirement Systems, and the Director of the Department of Retirement Systems in her official capacity as defendants. Dkt. # 1. Plaintiffs comprise retired law enforcement officers, firefighters, and one beneficiary who allege that they currently receive benefits under the LEOFF 1 plan. Dkt. # 9 at p. 6–7 ¶¶ 14–22.

---

[2] In deciding a motion to dismiss, a court may consider a writing referenced in the complaint if the plaintiff's claim necessarily relies on the document and there is no dispute as to its authenticity. *Swartz v. KPMG LLP,* 476 F.3d 756, 763 (9th Cir. 2007).

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW                                   7                    ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

The original complaint alleged a violation of Article I, Section 10, of the United States Constitution and Article I, Section 23, of the Washington State Constitution. After the parties conferred, Plaintiffs amended their complaint on June 16, 2026. Among other changes, they removed the State of Washington and the State of Washington Department of Retirement Systems as defendants and added the State Treasurer Mike Pellicciotti, in his official capacity, as a defendant. *See* Dkt. # 9. Plaintiffs also dropped their state constitutional claim, leaving a single count under the Contracts Clause of the federal Constitution. *See id*. at 18–20 ¶¶ 72–81.

### III.    LEGAL STANDARD

Defendants seek dismissal of Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Absent Article III standing and ripeness, a district court lacks subject matter jurisdiction, and the case must be dismissed. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). The presumption is "that federal courts lack jurisdiction 'unless the contrary appears affirmatively from the record.'" *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986)). Plaintiffs bear the burden to establish Article III standing and ripeness. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009).

Under Rule 12(b)(6), a court should grant a motion to dismiss if the complaint does not state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although factual allegations are viewed in the light most favorable to the plaintiff, the complaint must show "more than a sheer possibility that a defendant has acted unlawfully"—"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

8

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

Documents that are proper subjects of judicial notice may be considered without converting a motion to dismiss into one for summary judgment. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). Legislative history is properly a subject of judicial notice. *See Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) (taking notice of excerpts of Senate report). The same is true for matters of public record outside the pleadings. *See MGIC Indem. Corp.*, 803 F.2d at 504; *Dreiling v. American Express Co.,* 458 F.3d 942, 946 n.2 (9th Cir. 2006) (public documents filed with the SEC). The LEOFF 1 Study qualifies for judicial notice on both grounds.

## IV.    ARGUMENT

Under the restated pension plan that will be established by the law they challenge, Plaintiffs will receive the same benefits they have always had. That plan is statutorily mandated to be ***overfunded***—and, if necessary, buoyed by additional state contributions to retain full funding—to ensure that Plaintiffs do not suffer any harm. Plaintiffs' claims therefore fail for two reasons. First, their claimed injuries are hypothetical and conjectural, based on actions that may happen three years hence and, if they do happen then, will not affect their rights. Unable to show any actual or imminent injury, Plaintiffs lack Article III standing, and their claims are not ripe for review. Second, Plaintiffs fail to state a claim under the Contracts Clause. They cannot establish that E2SHB 2034 impairs their right to a defined-benefit pension, still less that it substantially impairs that right. The Legislature has ensured that the restated pension plan will be fully funded. Hence, Plaintiffs' Amended Class Action Complaint should be dismissed with prejudice.

## A.    Plaintiffs Cannot Establish Justiciability under Article III

The Court lacks subject matter jurisdiction because Plaintiffs cannot show justiciability under Article III. Plaintiffs' First Amended Complaint also makes clear that this case is not prudentially ripe.

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

**1.    Plaintiffs lack standing, and their claim is not constitutionally ripe**

Two related doctrines—each originating in the case-or-controversy requirement of Article III—make clear that Plaintiffs' case is not justiciable. First, standing to sue requires injury in fact. A plaintiff's injury must be "concrete and particularized and . . . actual and imminent, not conjectural or hypothetical[.]" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Second, the case must be "ripe"—that is, it cannot be dependent on "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see also Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (noting that the Article III ripeness inquiry "is often treated under the rubric of standing," and "in many cases . . . ripeness coincides squarely with standing's injury in fact prong.").

Plaintiffs cannot meet either requirement. The effective date of E2SHB 2034 is nearly three years away, and, as discussed below, the statute may well be amended before then. *See* 2026 Wash. Sess. Laws, ch. 261, §109(2). Even if unamended, E2SHB 2034 is designed to continue annuitants' benefits under LEOFF 1 without any interruption or adverse change. 2026 Wash. Sess. Laws, ch. 261, §§ 102–103; *see also* Dkt. # 9 at p. 12–13 ¶¶ 47–48 (discussing these provisions). This is fatal to Plaintiffs' claim. The restated pension plan will be funded at 110% of its projected liabilities. 2026 Wash. Sess. Laws, ch. 261, §§ 104–105; Dkt. # 9 at p. 13 ¶¶ 49–52 (discussing these provisions). And should unexpected economic conditions undercut those projections, the law requires the State to make all necessary contributions to ensure that the restated LEOFF plan is fully funded. 2026 Wash. Sess. Laws, ch. 261, § 502.

Although Plaintiffs may have a contractual right to a pension system that complies with IRS rules, including the exclusive benefit requirement, E2SHB 2034 likewise requires compliance with federal requirements. *See* 2026 Wash. Sess. Laws, ch. 261, § 109. Specifically, the law requires the Department obtain a private letter ruling from the IRS "to ensure the continuous compliance" of the restated pension plan with IRS rules. *Id.* This will allow the law

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

10

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

to be amended before the effective date if there are any issues. *See id.* (requiring any formal IRS findings that legislative changes are needed to be promptly submitted to the Governor and legislative committees). The law also provides the ultimate backstop of mandatorily reverting funds back to the restated pension fund with interest if additional funds are necessary to comply with IRS requirements. *See* 2026 Wash. Sess. Laws, ch. 261, § 109.

Plaintiffs' claims of possible injury are too speculative and rest on too many future contingencies to support standing. *See Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 545–47 & n.98 (5th Cir. 2016) ("our sister circuits have concluded that constitutional standing for defined-benefit plan participants requires imminent risk of default by the plan," plus "allegations of impact on individual benefits" (discussing *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013))); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002); *Perelman v. Perelman*, 919 F. Supp. 2d 512, 517–20 (E.D. Pa. Jan. 24, 2013), *aff'd*, 793 F.3d 368 (3d Cir. 2015)).

In short, because E2SHB 2034 mandates compliance with IRS requirements and ensures that the restated pension fund remains fully funded, Plaintiffs cannot meet their burden to show actual or imminent injury resulting from E2SHB 2034. This Court lacks jurisdiction to consider their claim.

### 2.    This case is not prudentially ripe

Even if Plaintiffs could satisfy the case-or-controversy requirement for federal jurisdiction, this Court should reject their claim as prudentially unripe. The ripeness doctrine "'prevent[s] the courts, through avoidance of premature adjudication[] from entangling themselves in abstract disagreements.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quoting *Portman v County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)). Prudential ripeness turns on consideration of (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (citation omitted); *Wolfson v. Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010) (finding certain claims were not prudentially ripe because

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

11

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

they rested upon contingent future events that might not occur as anticipated, if at all). Here, neither prong is met.

As to the first ripeness factor, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans*, , 586 F.3d at 1126 (citation omitted). Plaintiffs' claim is not now fit for judicial decision. The LEOFF 1 plan will remain in place until 2029. Meanwhile, the IRS will review proposed changes to confirm that the restated plan remains qualified under federal law. If not, E2SHB 2034 contemplates future amendments as well as reversion of any withdrawn funds.

As to the second prudential ripeness requirement, Plaintiffs must show that withholding judicial review would lead to "direct and immediate hardship" that will require "an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Stormans*, 586 F.3d at 1126 (internal quotation marks and citations omitted). Plaintiffs cannot show any credible threat of harm from delay in adjudicating this case. Any suggestion that their benefits will not be paid is contingent on a series of future improbable events: that the overfunded plan might become and remain underfunded, that the State might then fail to make contributions, and that the State might then take the unprecedented step of defaulting on pension benefit payments. The law is specifically designed to prevent these occurrences by providing 110% funding and requiring the State to make additional contributions in the event of a future UAAL. Hence, this case should be alternatively dismissed on prudential ripeness grounds.

**B.    Plaintiffs' Contracts Clause Claim Fails as a Matter of Law**

Because Plaintiffs cannot establish standing or ripeness, this Court should dismiss on those grounds and need go no further. However, Plaintiffs' constitutional claim is also fatally flawed. Article I, section 10, of the U.S. Constitution provides that "[n]o state shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10. Courts apply a two-step inquiry to evaluate Contracts Clause claims. The threshold issue is whether a state

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

12

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

law "has operated as a substantial impairment of a contractual relationship." *Sveen v. Melin*, 584 U.S. 811, 819 (2018) (cleaned up). If there is no substantial impairment, then there is no violation of the Contracts Clause, and the court "may stop after step one." *Id.* If the court finds substantial impairment of a contractual relationship, then step two asks "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Rsrvs. Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12 (1983)). Here, Plaintiffs fail to state a claim that either step is violated.

### 1. E2SHB 2034 does not impair annuitants' contractual right to their defined benefits

Plaintiffs fail to state a claim that there is any substantial impairment of contract regarding their LEOFF 1 defined benefits. While Plaintiffs have a right to their defined benefits and to an actuarially sound pension system, E2SHB 2034 ensures that those rights will continue to be protected. 2026 Wash. Sess. Laws, ch. 261, § 101 ("only after actuarially sufficient assets have been transferred . . . shall there be a reversion of any surplus assets to the state"), § 102 ("all benefits, as they existed prior to termination and restatement, shall continue without interruption"). The restated plan will remain overfunded, starting life at "110 percent of the actuarial present value of the fully projected benefits" of the plan. 2026 Wash. Sess. Laws, ch. 261, § 105. And in the event any UAAL develops in the future, the State is obligated to make additional contributions to bring the plan back to fully funded status. 2026 Wash. Sess. Laws, ch. 261, § 502(2)(d).

To determine whether there has been a substantial impairment of contract, the Court's inquiry "is not whether any contractual relationship whatsoever exists between the parties, but whether there was a contractual agreement *regarding the specific . . . terms allegedly at issue.*" *Robertson v. Kulongoski*, 466 F.3d 1114, 1117 (9th Cir. 2006) (emphasis in original) (internal quotations and citations omitted). This inquiry is guided by three factors: "the extent to which" the law (1) "undermines the contractual bargain," (2) "interferes with a party's reasonable

DEFENDANTS' MOTION TO DISMISS          13          ATTORNEY GENERAL OF WASHINGTON
NO. 2:26-cv-01469-JNW                                                    Revenue and Finance Division
                                                                              7141 Cleanwater Dr. Sw
                                                                                 P.O. Box 40123
                                                                           Olympia, WA 98504-0123
                                                                                  360-753-5515

expectations," and (3) "prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819.

LEOFF 1 members have a contractual relationship with the State regarding their pension benefits. *See Bakenhus v. Seattle*, 296 P.2d 536 (Wash. 1956). Defendants do not dispute that LEOFF 1 annuitants have a vested contractual right to their monthly defined benefit allowances and yearly cost-of-living adjustments (COLAs) on those allowances. LEOFF 1 annuitants also have a "vested contractual pension right 'to a retirement system actuarially designed through systematic funding to meet present and future pension liabilities.'" *Ret. Pub. Emps. Council of Wash. v. Charles*, 62 P.3d 470, 483 (Wash. 2003) (quoting *Weaver v. Evans*, 495 P.2d 639, 650 (Wash. 1972)); *see* 2026 Wash. Sess. Laws, ch. 261, § 101 (E2SHB 2034 recognizes LEOFF 1 members' "contractual right to a secure retirement benefit, funded on a systematic basis").

All those things remain untouched by E2SHB 2034. The bill terminates but then restates annuitants' retirement allowances and COLA provisions without any substantive changes. *See* 2026 Wash. Sess. Laws, ch. 261, §§ 317–18 (monthly allowances), §§ 322–24, (monthly disability retirement allowance), §§ 328-329 (monthly defined benefit for qualifying surviving spouses), § 342 (COLA provision). The bill explicitly requires that "all benefits, as they existed prior to termination and restatement, shall continue without interruption." 2026 Wash. Sess. Laws, ch. 261, § 102.

In addition, the restated LEOFF system must remain sufficiently funded to meet its actuarial needs. Indeed, it will remain overfunded, since the Treasurer is directed to transfer to the restated LEOFF defined benefit retirement fund an amount equaling 110% of the actuarial present value of its fully projected benefit liabilities. 2026 Wash. Sess. Laws, ch. 261, § 105. Plaintiffs emphasize that the Treasurer's transfer of surplus funds into the pension surplus holding account increases the actuarial risk that the fund may fall below 100% funded status at some point in the future, should equity markets substantially underperform compared with

DEFENDANTS' MOTION TO DISMISS          14          ATTORNEY GENERAL OF WASHINGTON
NO. 2:26-cv-01469-JNW                                      Revenue and Finance Division
                                                                          7141 Cleanwater Dr. Sw
                                                                          P.O. Box 40123
                                                                          Olympia, WA 98504-0123
                                                                          360-753-5515

the State's actuarial assumptions. Dkt. # 9 at p. 16 ¶ 62. But this is pure speculation. And even if the markets perform worse than the Office of the State Actuary assumes, the State is obligated to make additional contributions to return the restated LEOFF system to fully funded status. *See* 2026 Wash. Sess. Laws, ch. 261, § 502(2)(d) (requiring "a state contribution . . . based on a systematic actuarial funding policy that would fully amortize the unfunded liability over reasonable periods using reasonable assumptions and methods," if "the state actuary determines an unfunded liability exists in the restated [LEOFF] system").

Moreover, as the Legislature recognized, the State remains "the ultimate guarantor of" LEOFF 1 annuitants' benefits. 2026 Wash. Sess. Laws, ch. 261, § 101. The law requires that the restated LEOFF system remain sufficiently funded to pay annuitants' monthly benefits. The terms of those benefit entitlements will remain unchanged. The bill makes no change to, and thus does not impair, annuitants' vested contractual rights.

### 2. Plaintiffs have no right to the surplus investment earnings of the LEOFF 1 plan

Plaintiffs' Amended Complaint conflates two distinct concepts: (1) the right to receive benefits under LEOFF 1; and (2) an alleged right to have the LEOFF Plan 1 fund retain all accumulated assets above and beyond what is needed to pay those benefits. Only the former can be characterized as a contractual right subject to constitutional protection.

Courts have repeatedly held that members of a defined benefit pension plan have no interest in the plan's surplus earnings. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438–41 (1999); *Koster v. City of Davenport*, 183 F.3d 762, 767 (8th Cir. 1999) ("[A] defined benefit plan entitles the members to a predetermined distribution upon retirement and to an actuarially sound plan . . . It does not entitle them to any use of the contributions other than to ensure the above entitlements are met."); *id*. at 768 (in a defined benefit plan, "the members are entitled to a predetermined benefit, not to the contributions made on their behalf."); *Borst v. Chevron Corp.*, 36 F.3d 1308, 1317 (5th Cir. 1994) ("It is settled that a plan amendment may validly

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

15

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

provide for reversion of surplus assets to the employer on final termination of an employer funded defined benefit pension plan."); *Malia v. Gen. Elec. Co.*, 23 F.3d 828, 832 (3d Cir. 1994) (defined benefit plan participants had no right to residual surplus assets when plan was terminated pursuant to merger with another plan); *Johnson v. Georgia-Pacific Corp.*, 19 F.3d 1184, 1189 (7th Cir. 1994) ("A defined benefit-plan gives current and former employees property interests in their pension benefits but not in the assets held by the trust."); *Outzen v. Fed. Deposit Ins. Corp.*, 948 F.2d 1184 (10th Cir. 1991) (concluding there was "no employee expectation of benefits beyond those defined by the Plan" and affirming reversion of excess funds to the plan sponsor); *Wilson v. Bluefield Supply Co.*, 819 F.2d 457, 460–65 (4th Cir. 1987) (upon termination of defined benefit plan, sponsor was entitled to surplus assets beyond those needed to satisfy liabilities to plan participants and their beneficiaries); *Washington-Baltimore Newspaper Guild Loc. 35 v. Wash. Star Co.*, 555 F. Supp. 257, 261 (D.D.C. 1983), *aff'd without opinion*, 729 F.2d 863 (D.C. Cir. 1984) (distribution of residual assets to employer on plan termination was permissible because "[a]s a defined benefit plan, the participants, in the absence of an agreement to the contrary, have no right to a windfall resulting from an employer's overly generous contributions to the plan").

Unlike a defined contribution plan, where an employee is entitled to the funds placed in their individual retirement account, a defined benefit plan such as LEOFF 1 entitles the employee, upon retirement, to "a fixed periodic payment." *Hughes Aircraft Co.*, 525 U.S. at 439. As the Court in *Hughes Aircraft* explained, "[t]he structure of a defined benefit plan reflects the risk borne by the employer[,]" who "typically bears the entire investment risk and . . . must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Id.* at 440–41. "Since a decline in the value of [the] plan's assets does not alter accrued benefits, members similarly have no entitlement to share in a plan's surplus—even if it is partially attributable to the investment growth of their contributions." *Id.*

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

16

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

None of the three factors that guide this Court's analysis favor finding a substantial impairment of contract rights here. *See Sveen*, 584 U.S. at 819. First, the new law does not "undermine[] the contractual bargain" between LEOFF 1 members and the State, because annuitants remain fully entitled to their defined benefits. *Id.* The restated plan will remain overfunded, and the State, as guarantor, is expressly required to make contributions should it become underfunded in the future. Second, the law does not "interfere[] with a party's reasonable expectations," because annuitants receiving a defined benefit do not have a reasonable expectation to the plan's surplus—only to their accrued benefits and the systematic funding needed to ensure those benefits are not at risk of going unpaid. *Id.* Third, the law does not "prevent[] [a] party from safeguarding or reinstating his rights." *Id.* The bill has no impact on annuitants' ability to apply for and claim their benefits from the Department of Retirement Systems, and to contest adverse benefit determinations through the State Administrative Procedure Act. *See* 2026 Wash. Sess. Laws, ch. 261, §§ 339–41 (restating LEOFF 1 administrative appeal and judicial review provisions verbatim), § 448 (Department director's general duties in administering the restated plan are unchanged); Wash. Rev. Code § 41.50.135(2) (administrative process for contesting overpayment determinations, unaffected by E2SHB 2034).

When it enacted LEOFF 1, the Legislature did not promise that the plan would be more than 110% overfunded, and it certainly did not promise that annuitants would be personally entitled to a pro rata share of any surplus earnings. It simply promised that annuitants would receive monthly defined benefit allowances as calculated by the applicable statutory formulas. The Legislature did not alter or eliminate that promise when it enacted E2SHB 2034. Therefore, it did not substantially impair annuitants' vested contractual rights.

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

17

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

**3.      Exclusive benefit provisions do not prevent the reversion of surplus assets to the State**

As Plaintiffs' Amended Complaint notes, the LEOFF 1 fund must be used for the exclusive benefit of plan members and beneficiaries. Dkt. # 9 at pp. 3, 11, 18 ¶¶ 1, 3, 40, 74. The basis for this requirement is *not* Wash. Rev. Code § 41.26.040(3), which governs legacy municipal pension plans (see below), but rather federal law and state regulation: "No assets of the retirement system may be used for or diverted to a purpose other than the exclusive benefit of the members and their beneficiaries at any time prior to the satisfaction of all liabilities with respect to members and their beneficiaries." Wash. Admin. Code § 415-02-756. The purpose of this regulation is "to ensure compliance with the federal Internal Revenue Code" requirements governing qualified governmental plans. Wash. St. Reg. 10-24-099 (filed Dec. 1, 2010). Specifically, it ensures compliance with the exclusive benefit rule stated in 26 U.S.C. § 401(a)(2) and 26 C.F.R. § 1.401-2(a), which contain substantially similar language.

The federal exclusive benefit rule provisions expressly authorize termination and restatement of qualified governmental plans such as LEOFF 1 to recapture surplus funds. *See* 26 C.F.R. § 1.401-2(b)(1). These federal provisions "are clearly intended to ensure that while an employer is obligated to provide defined benefits to plan participants, the participants should not be able to claim a windfall stemming from the employer's accidental overfunding of a defined benefit plan." *Wash.-Baltimore Newspaper Guild*, 555 F. Supp. at 260. Courts uniformly hold that the exclusive benefit rules do not limit the recapture provisions. *E.g., Borst*, 36 F.3d at 1320–21. E2SHB 2034 directs the Department to obtain guidance from the IRS to ensure the legislation does not imperil the restated LEOFF plan's qualified tax status. If E2SHB 2034's provisions are found noncompliant, the statute contemplates amendment and even—if necessary—return of any reverted funds with interest. 2026 Wash. Sess. Laws, ch. 261, § 109.

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

Plaintiffs can have no reasonable expectation that the LEOFF 1 plan would never be subjected to a termination and reversion of surplus assets that complies with the federal exclusive benefit rule. Such a termination and reversion also does not undermine their contractual bargain because it (1) requires that the plan's liabilities be fully funded before any surplus is reverted, and (2) in the event any UAAL develops in the future, requires the State to make contributions to eliminate the UAAL. Thus, there is no substantial impairment of Plaintiffs' contractual rights.

### 4.    Plaintiffs' reliance on Wash. Rev. Code § 41.26.040(3) is misplaced

Plaintiffs' amended complaint cites Wash. Rev. Code § 41.26.040(3) seven times to support Plaintiffs' claim that the law they challenge is unlawful. Dkt. # 9 at pp. 3, 4, 9, 11, 14–15, 17 ¶¶ 3, 7, 28, 41, 57, 59, 67. Nearly all these citations include the same partial quotation and the suggestion or assertion that it applies to LEOFF 1. This is simply wrong, and repetition does not make it right.

Wash. Rev. Code § 41.26.040(3), enacted in 1969, provides as follows:

> (3) All funds held by any firefighters' or police officers' relief and pension fund shall remain in that fund for the purpose of paying the obligations of the fund. The municipality shall continue to levy the dollar rate as provided in RCW 41.16.060, and this dollar rate shall be used for the purpose of paying the benefits provided in chapters 41.16 and 41.18 RCW. The obligations of chapter 41.20 RCW shall continue to be paid from whatever financial sources the city has been using for this purpose.

The phrase, "any firefighters' or police officers' relief and pension fund," refers to the pension funds that were maintained by Washington municipalities when the LEOFF system was established. These were created under, and remain subject to, Wash. Rev. Code 41.16, 41.18, and 41.20. This specific reference is made clear by the remainder of the statute, by its surrounding provisions, and by the definitions that the Legislature adopted and employed.

Subsection 41.26.040(3) is part of the statutory section that created the LEOFF 1 system. 1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209, § 4 (enacting original version of

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

19

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

Wash. Rev. Code § 41.26.040). The preceding section established the definitions for terms used in that statute. *See* 1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209, § 3. Unless the context plainly required otherwise, "retirement system" meant LEOFF: "the 'Washington law enforcement officers' and fire fighters' retirement system' provided herein." 1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209, §3(1). Subsection 4(1) required all fire fighters and law enforcement officers initially employed on or after March 1, 1970, to "be members of the retirement system established by this 1969 amendatory act, to the exclusion of any pension system existing under any prior act." Subsection 4(2) stated that any employee who had "made retirement contributions under any prior act shall have his membership transferred to the system established by this amendatory act on March 1, 1970," with this proviso: "for purposes of employee contribution rate, creditability of service, eligibility for service or disability retirement, and survivor and all other benefits," the employee would also continue to be covered by the prior act and have any superior benefits paid by the municipality by which he was employed. Then followed subsection 4(3), which was intended to make sure that these benefits, as well as pension benefits to persons already retired (who were unaffected by the new law), could and would be paid.

Wash. Rev. Code § 41.26.040(3) nowhere refers to the "retirement system" (i.e., LEOFF) or to the "retirement fund," which is the defined term for the LEOFF fund established by the 1969 statute. *See* 1969 Wash. Sess. Laws, 1st Ex. Sess., ch. 209, §3(9). The term "relief and pension funds" refers solely to the funds established under other law: Wash. Rev. Code 41.16 ("Firefighters' Relief and Pensions—1947 Act"), Wash. Rev. Code 41.18 ("Firefighters' Relief and Pensions—1955 Act"), and Wash. Rev. Code 41.20 ("Police Relief and Pensions in First-Class Cities").

In short, the purpose of Wash. Rev. Code Section 41.26.040(3) was to require that funds be retained in the various pre-LEOFF pension funds to meet those funds' ongoing obligations. That subsection does not apply to the LEOFF 1 fund at all.

DEFENDANTS' MOTION TO DISMISS          20
NO. 2:26-cv-01469-JNW

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

**5.     E2SHB 2034 is drawn in an appropriate and reasonable way to advance a significant and legitimate purpose**

Because E2SHB 2034 does not substantially impair Plaintiffs' contractual rights, this Court should "stop after step one" of its Contracts Clause analysis and dismiss Plaintiffs' suit. *Sveen*, 584 U.S. at 819. But even if there were a substantial impairment, E2SHB 2034 satisfies step two: it advances the public purposes of responsible use of fiscal resources, elimination of unforeseen windfall profits, and provision of retirement benefits in an appropriate and reasonable way.

Even state laws that substantially impair contractual relationships are constitutionally permissible if they are "drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Id.* (internal quotations omitted). This requirement "guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Energy Rsrvs. Grp., Inc.*, 459 U.S. at 412. When, as here, the State is a party to the contract, courts "defer to a lesser degree" than they otherwise would in reviewing legislative judgment regarding the necessity and reasonableness of a particular measure. *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1147 (9th Cir. 2004).

"One legitimate state interest is the elimination of unforeseen windfall profits." *Energy Rsrvs. Grp., Inc.*, 459 U.S. at 412 (citing *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 31 n. 30 (1977)); *cf. Wash.-Baltimore Newspaper Guild*, 555 F. Supp. at 260 (Section 401(a)'s termination and reversion provisions "are clearly intended to ensure that while an employer is obligated to provide defined benefits to plan participants, the participants should not be able to claim a windfall stemming from the employer's accidental overfunding of a defined benefit plan"). Additionally, the State has a significant and legitimate purpose in the responsible use of fiscal resources. And, of course, the State recognizes its important purpose of continuing to provide "secure retirement benefit[s]" through "an actuarially sound retirement program." 2026 Wash. Sess. Laws, ch. 261, § 101.

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

21

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

E2SHB 2034 enacts an appropriate and reasonable way to advance those purposes. Approximately 80% of all funds contributed to the LEOFF 1 fund over the life of the plan have come from the State through general fund appropriations. LEOFF 1 Study, at 8–9; 2026 Wash. Sess. Laws, ch. 261, § 101. This has led to a surplus of some $3.3 billion beyond those assets needed to meet the plan's projected liabilities. *Id.* Termination and restatement reasonably advances legitimate government purposes by ensuring that the reversion of any surplus assets happens "only after actuarially sufficient assets have been transferred to the restated [LEOFF] system." *Id.* Termination and restatement is also necessary to achieve these purposes, because only through that mechanism may the State revert surplus assets without violating the exclusive benefit rule in the plan regulations and federal tax law.

Because E2SHB 2034 advances these purposes in an appropriate, reasonable, and even necessary way, it passes constitutional muster under step two of the Supreme Court's Contracts Clause analysis.

## V.    CONCLUSION

The Court should dismiss Plaintiffs' Amended Class Action Complaint for Declaratory and Injunctive Relief for lack of subject matter jurisdiction and for failure to state a claim. Because additional amendment would be futile, Defendants respectfully request that the dismissal be with prejudice.

DATED this 21st day of July 2026.

I certify that this memorandum contains 7,482 words, in compliance with the Local Civil Rules. I also certify that the parties conferred in advance of filing this Rule 12(b) motion to dismiss, in compliance with the Honorable Judge Jamal N. Whitehead's Chambers Procedures.

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

22

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515

NICHOLAS W. BROWN
Attorney General of Washington

/s/ David C. Moon
DAVID C. MOON, WSBA #54546
ANDREW J. KRAWCZYK, WSBA #42982
AARON J. FICKES, WSBA #51584
Assistant Attorneys General
7141 Cleanwater Dr. SW
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515
David.Moon@atg.wa.gov
Andrew.Krawczyk@atg.wa.gov
Aaron.Fickes@atg.wa.gov

*Attorneys for Defendants*

K&L GATES LLP

/s/ Robert B. Mitchell
ROBERT B. MITCHELL, WSBA #10874
PHILLIP M. GUESS, WSBA #26765
PETER A. TALEVICH, WSBA #42644
Attorneys at Law
925 Fourth Ave., Ste. 2900
Tel: 206-623-7580
Fax: 206-623-7022
Rob.Mitchell@klgates.com
Phillip.Guess@atg.wa.gov
Peter.Talevich@klgates.com

*Atttorneys for Defendants*

DEFENDANTS' MOTION TO DISMISS
NO. 2:26-cv-01469-JNW

23

ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Dr. Sw
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515