UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSEPH DAWSON; JOHN NORDLUND; ALAN DENNIS VICKERY; JOHN ZIMMARO; DAVID REICHERT; ANDREW WILSON; JERALD BIRT; MARILYN CURTIS; and MICHAEL DUCHEMIN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KATHRYN LEATHERS, in her official capacity as Director of the Washington Department of Retirement Systems, and MIKE PELLICCIOTTI, in his official capacity as Washington State Treasurer,

Defendants.

Case No. 2:26-cv-01469-JNW

**OPPOSITION TO MOTION TO DISMISS**



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## TABLE OF CONTENTS


Page

I. INTRODUCTION ....................1

II. STANDARDS OF REVIEW ....................3

III. ARGUMENT ....................4

A. Plaintiffs' claim is justiciable....................4

1. Plaintiffs have Article III standing to bring their Contract Clause claim for injunctive and declaratory relief. ....................4

a. Plaintiffs' injury is concrete. ....................5

b. Plaintiffs' injury is particularized. ....................6

c. Plaintiffs' injury is imminent. ....................6

d. Plaintiffs' injury is caused by Defendants and is redressable. ....................6

2. The Contract Clause claim is prudentially ripe for adjudication. ....................6

a. Plaintiffs' claim is fit for adjudication. ....................7

b. Plaintiffs face substantial hardship if their claims are not adjudicated. ....................7

B. Plaintiffs state a valid Contract Clause claim. ....................8

1. Courts assess three elements in resolving a claim under the Contract Clause for modification of a public retirement fund. ....................8

2. Plaintiffs allege a valid claim for violation of the federal Contract Clause. ....................10

a. Plaintiffs have vested contractual rights to funding of retirement benefits under LEOFF 1. ....................10

b. Plaintiffs adequately allege that E2SHB 2034 substantially impairs the State's contractual obligations. ....................10

(1) Removing billions of dollars from LEOFF 1 will substantially impair the State's




HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

contractual obligations without assessing actuarial unsoundness. ....................................................11

(2) Plaintiffs adequately allege that E2SHB 2034 substantially impairs the State's contractual obligations by making the LEOFF 1 Plan actuarially unsound. ..................................14

c. The FAC adequately alleges that E2SHB 2034 was adopted for an impermissible purpose under the Contract Clause. ..................................................................18

(1) Decisions by the Supreme Court, the Ninth Circuit, and the Washington Supreme Court establish that the State lacks a legitimate purpose for enacting E2SHB 2034. ..................................18

(2) Defendants' argument that the Act serves a legitimate purpose is unsupported by the law or facts. ..................................................................20

IV. CONCLUSION ..........................................................................................................22




HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Amazon Return Pol'y Litig.*,
2025 WL 1237665 (W.D. Wash. Apr. 29, 2025)....4

*Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*,
10 F.4th 905 (9th Cir. 2021) ....19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....3

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
941 F.3d 1195 (9th Cir. 2019) ....7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....3

*Borst v. Chevron Corp.*,
36 F.3d 1308 (5th Cir. 1994) ....13

*Bowen v. Energizer Holdings, Inc.*,
118 F.4th 1134 (9th Cir. 2024) ....4

*Cardenas v. Anzai*,
311 F.3d 929 (9th Cir. 2002) ....7

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ....5, 6

*Edelman v. Jordan*,
415 U.S. 651 (1974)....8

*Energy Rsrvs. Grp. v. Kan. Power & Light Co.*,
459 U.S. 400 (1983)....20

*FEC v. Akins*,
524 U.S. 11 (1998)....6

*Flaxman v. Ferguson*,
151 F.4th 1178 (9th Cir. 2025) ....6

*Heights Apartments, LLC v. Walz*,
30 F.4th 720 (8th Cir. 2022) ....13

*Hester v. State*,
197 Wn.2d 623 (2021) ....18



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Hughes Aircraft Co. v. Jacobson*,
525 U.S. 432 (1999) .......... 21, 22

*Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*,
146 Wn.2d 207 (2002) .......... 10

*Isaacson v. Mayes*,
84 F.4th 1089 (9th Cir. 2023) .......... 6

*Iten v. Los Angeles*,
81 F.4th 979 (9th Cir. 2023) .......... 5, 6, 8

*Jones v. Best*,
134 Wn.2d 232 (1998) .......... 11

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) .......... 4

*Koster v. City of Davenport*,
183 F.3d 762 (8th Cir. 1999) .......... 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 4

*Lynch v. United States*,
292 U.S. 571 (1934) .......... 19

*Maneman v. Weyerhauser Co.*,
2026 WL 884985 (Mar. 31, 2026 W.D. Wash.) .......... 5, 8, 14

*Panelli v. Target Corp.*,
172 F.4th 1120 (9th Cir. 2026) .......... 3

*Planned Parenthood Great Nw. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) .......... 8

*Pub. Emps.' Ret. Bd. v. Washoe Cnty.*,
96 Nev. 718 (1980). .......... 9

*Retired Pub. Emps. Council of Wash. v. Charles*,
148 Wn.2d 602 (2003) .......... 10, 15, 16, 22

*State of Nev. Emps. Ass'n, Inc. v. Keating*,
903 F.2d 1223 (9th Cir. 1990) .......... 2, 8, 9, 18

*Stockton v. Brown*,
152 F.4th 1124 (9th Cir. 2025) .......... 4

*Stone v. State*,
191 N.C. App. 402 (2008) .......... 16



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

*Sveen v. Melin*,
584 U.S. 811 (2018) ........ 2, 10, 15, 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 4, 5

*U.S. Tr. Co. v. New Jersey*,
431 U.S. 1 (1977) ........ 19, 20, 21

*Univ. of Haw. Pro. Assembly v. Cayetano*,
183 F.3d 1096 (9th Cir. 1999) ........ 19, 20

*Valdes v. Cory*,
139 Cal. App. 3d 773 (1983) ........ 8, 17

*W. Virginia v. Env't Prot. Agency*,
597 U.S. 697 (2022) ........ 7

*Washington Education Ass'n v. Washington Department of Retirement Sys*tems,
181 Wn.2d 233 (2014) ........ 11

*Washington-Baltimore Newspaper Guild Local 35 v. Washington Star Co*.,
555 F. Supp. 257 (D.D.C. 1983) ........ 13, 21

*Weaver v. Evans*,
80 Wn.2d 461 (1972) ........ 3, 17

**STATUTES**

26 U.S.C. 401(a) ........ 12

RCW 41.26.010 ........ 1

RCW 41.26.030(22) ........ 1

2026 Wash. Sess. Laws, ch. 261, § 109 ........ 7

**OTHER AUTHORITIES**

26 C.F.R. § 1.401-2(b)(1) ........ 12, 13

Wash. Admin. Code § 415-02-756. E2SHB 2034 ........ 5, 6, 12, 13



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

## I. INTRODUCTION

Defendants' motion to dismiss, Dkt. 15, should be denied.[1]

In 1969, the State of Washington passed the Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act, RCW 41.26.010, *et seq.*, which created a retirement plan for all law enforcement officers and firefighters in the State. That Act applies in part to "LEOFF Plan 1" or "LEOFF 1," which provides "the benefits and funding provisions covering persons who first became members of the system prior to October 1, 1977." RCW 41.26.030(22). As of June 30, 2025, approximately 5,850 members of LEOFF Plan 1 were receiving benefits and only six members were not retired. ¶ 1.[2]

Now, the State has enacted a law designed to raid LEOFF 1 and transfer $3.3 billion or more to a general fund to cover a shortfall in other areas of the State budget. ¶ 4. The law, which is denominated Engrossed Second Substitute House Bill 2034 ("E2SHB 2034"), will terminate the LEOFF 1 plan on June 30, 2029, and replace it with a "Restated LEOFF" retirement system that takes on the former LEOFF 1 retirees, with the same benefits as LEOFF 1. *Id.* The law states that "[o]n June 30, 2029, at the direction of the director of retirement systems, the state treasurer shall transfer to the restated law enforcement officers' and firefighters' defined benefit retirement fund an amount equal to 110 percent of the actuarial present value of the fully projected benefits of plan 1 of the Washington law enforcement officers' and firefighters' retirement system . . . ." E2SHB 2034, § 105(1). The requirement that money be transferred out of LEOFF Plan 1 and into other programs is part of an elaborate plan by the State of Washington to stave off a very serious budget shortfall. ¶ 7.

Plaintiffs adequately allege that E2SHB 2034 violates their rights under the Contract Clause of the United States Constitution (article I, section 10) in two primary respects. *First*, as Defendants acknowledge, "the LEOFF 1 fund must be used for the exclusive benefit of plan members and beneficiaries." Mot. at 24. Defendants erroneously claim that the State may avoid

[1] Defendants' Motion to Dismiss ("Motion" or "Mot."), Dkt. 15. All citations to the Motion in this Opposition are to the ECF page number at the top of each page, not the number at the bottom of the page.

[2] All citations to "¶" in this brief are to the Amended Class Action Complaint for Declaratory and Injunctive Relief ("FAC" or "First Amended Complaint"), Dkt. 9.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

that duty because the "federal exclusive benefit rule provisions expressly authorize termination and restatement of qualified governmental plans such as LEOFF 1 to recapture surplus funds. *See* 26 C.F.R. § 1.401-2(b)(1)." *See* Mot. at 24. As shown in detail below, that regulation applies *only* at the "termination" and "liquidation" of a trust and does *not* "authorize termination and restatement of qualified governmental plans such as LEOFF 1 to recapture surplus funds." *See* Mot. at 24.

Defendants' plan to remove billions of dollars from LEOFF 1 violates the Contract Clause. The State's failure to use LEOFF 1 funds for the exclusive benefit of plan members and beneficiaries substantially impairs the LEOFF 1 contractual relationship because it "undermines the contractual bargain, interferes with [Plan members'] reasonable expectations, and prevents the [Plaintiffs] from safeguarding or reinstating his rights." *Sveen v. Melin*, 584 U.S. 811, 819 (2018). Moreover, E2SHB 2034 does not serve a legitimate purpose. For public pensions and retirement funds, "the modification must bear some material relationship to the purpose of the pension system and its successful operation; and any disadvantage to employees must be accompanied by comparable new advantages." *State of Nev. Emps. Ass'n, Inc. v. Keating*, 903 F.2d 1223, 1227 (9th Cir. 1990) (citation omitted). Withdrawing billions of dollars to fund a general budget shortfall does not meet that standard, particularly because the *only* benefit for Plan members is that seven or fewer will have their rights vested, while the remaining 5,800 members will not receive *any* benefit. *See* ¶¶ 55–56.

*Second*, E2SHB 2034 independently violates the Contract Clause by rendering LEOFF 1 actuarially unsound. The Office of the State Actuary has found that E2SHB 2034 "increases the potential of future state contributions if adverse experience occurs because, after the asset transfers to the CCA/PFSA [Climate Commitment Account and Pension Funding Stabilization Account, respectively], there will be fewer assets in the Restated LEOFF 1 Fund." ¶ 61. The Office "found the portion of scenarios where a UAAL [i.e., Unfunded Actuarial Accrued Liability] emerges by Fiscal Year (FY) 2045 increased from 5% to 40% as a result of this bill; this represents the risk of required UAAL payments by the state increasing by a factor of roughly 8 (or eightfold) over this 20-year timeframe." *Id.* That eightfold increase proves a violation of the


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Contract Clause, particularly at the pleading stage. *See* Mot. at 19 ("Plaintiffs have a right to their defined benefits and to an actuarially sound pension system.").

Defendants present two erroneous arguments in claiming that Plaintiffs cannot establish substantial impairment of their contractual rights. *First*, they argue that the Actuary Office's forecast "is pure speculation." *Id*. at 21. That is nonsense, unsupported by any authority. And in any event, Defendants ignore that if actuarial estimates by the State's own actuary are "pure speculation," E2SHB 2034 itself rests entirely on speculation.

*Second*, they contend that "even if the markets perform worse than the Office of the State Actuary assumes, the State is obligated to make additional contributions to return the restated LEOFF system to fully funded status." *Id.* Defendants' argument absurdly would require Plan members, as a matter of law, to trust the State to fund future shortfalls even though the State refuses to honor its promise to use all funds in LEOFF 1 solely for the benefit of Plan members and beneficiaries. Moreover, the Washington Supreme Court has rejected the same argument. In *Weaver v. Evans*, 80 Wn.2d 461 (1972), the Court held that the governor unlawfully withheld funds from a teachers' retirement system. The Governor contended that "subsequent legislatures can restore to the pension reserve fund any transfers therefrom which might affect its actuarial soundness." *Id*. at 475. Despite that argument, the Court required the Governor to restore the funds immediately. Similarly here, Defendants' contention that the legislature is obligated to fund future benefits does not satisfy the Contract Clause.

Defendants' motion should be denied for the foregoing reasons, which are developed in detail below. And as explained in Section III(A), below, all of these issues are justiciable.

## II. STANDARDS OF REVIEW

A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Panelli v. Target Corp.*, 172 F.4th 1120, 1124 (9th Cir.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

2026). The "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support their claims.'" *In re Amazon Return Pol'y Litig.*, 2025 WL 1237665, at *1 (W.D. Wash. Apr. 29, 2025) (quoting *McGary v. Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004)).

Plaintiffs "must allege sufficient facts that, taken as true, 'demonstrat[e] each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023) (alteration in original) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The Ninth Circuit has "distinguished between 'facial' and 'factual' challenges to jurisdictional allegations in a complaint." *Id.* at 1056 n.1. In a facial challenge, as made here, "the moving party accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Id.* (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted)). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6)." *Id.* (quoting *Leite*, 749 F.3d at 1121). If "jurisdictional issues are 'intertwined with an element of the merits of the plaintiff's claim,' the court must treat the motion like a motion for summary judgment and 'leave the resolution of material factual disputes to the trier of fact.'" *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting *Leite*, 749 F.3d at 1122).

## III. ARGUMENT

### A. Plaintiffs' claim is justiciable.

#### 1. Plaintiffs have Article III standing to bring their Contract Clause claim for injunctive and declaratory relief.

Plaintiffs adequately allege constitutional standing, which requires (1) an injury in fact that is concrete, particularized, and actual or imminent, (2) causation, and (3) redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A claim is also constitutionally ripe if these requirements are met. *Stockton v. Brown*, 152 F.4th 1124, 1142 (9th Cir. 2025). At the pleading stage, "general factual allegations of injury" are sufficient to establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quotations omitted).



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**a. Plaintiffs' injury is concrete.**

Defendants erroneously contend that Plaintiffs do not allege an injury in fact. *See* Mot. at 16–17. Every case Defendants cite—four out-of-circuit decisions—concerns standing for ERISA claims in private litigation, not claims against a State under the Contract Clause. *See* Mot. at 16–18. But standing "often turns on the nature and source of the claim asserted." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). Thus "to understand whether [plaintiffs have] standing to bring [a] Contracts Clause claim . . . we will need to understand the nature of claims under the Contracts Clause." *Iten v. Los Angeles*, 81 F.4th 979, 985–86 (9th Cir. 2023).

To "show injury and causation for standing purposes," plaintiffs "need only allege that the [state action] imposed additional rights, remedies, conditions, or procedures that impair the obligations to which [they] had contracted." *Id*. at 988. State law provides that "[n]o assets of the retirement system may be used for or diverted to a purpose other than the exclusive benefit of the members and their beneficiaries at any time prior to the satisfaction of all liabilities with respect to members and their beneficiaries." Wash. Admin. Code § 415-02-756. E2SHB 2034 violates that obligation by unilaterally requiring Defendants to transfer $3.3 billion or more out of the fund and increasing the risk of underfunding by eightfold. *See* § III(B). Such impairments are "the quintessential example of what the Contracts Clause was designed to prohibit." *Iten*, 81 F.4th at 988; *see also id.* at 992 ("Iten, at least for purposes of filing a complaint, has alleged that the obligations of his contract had been 'taken away or materially lessened.' That is sufficient to state a claim under the Contracts Clause." (citation omitted) (quoting *Lynch v. United States*, 292 U.S. 571, 580 (1934))) .

ERISA standing differs. ERISA plaintiffs must allege tangible physical or financial harms because they are not suing for well-established historical or constitutional injuries. *See TransUnion*, 594 U.S. at 425 ("[T]raditional harms may also include harms specified by the Constitution itself."). Even so, a court in this District has held that allegations of "substantial risk of default" suffice even for ERISA claims. *See Maneman v. Weyerhauser Co.*, 2026 WL 884985, at *9 (Mar. 31, 2026 W.D. Wash.). In short, Defendants argue that Plaintiffs lack standing for a claim they did not bring.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**b. Plaintiffs' injury is particularized.**

Plaintiffs are Plan beneficiaries—inactive Washington law enforcement officers and firefighters hired before October 1, 1977—for whose exclusive benefit all Plan funds must be used. *See* Wash. Admin. Code § 415-02-756. Impairment of the Plan is therefore particularized to them, not a generalized grievance. *See FEC v. Akins*, 524 U.S. 11, 23-24 (1998).

**c. Plaintiffs' injury is imminent.**

Plaintiffs who seek injunctive relief "need not 'await the consummation of threatened injury to obtain prospective relief.'" *Chapman*, 631 F.3d at 949 (quoting *Farmer v. Brennan*, 511 U.S. 825, 845 (1994)). Defendants erroneously argue that no injury will befall Plaintiffs because the State will foot the bill for any "Unfunded Actuarial Accrued Liability" or may comply with any adverse IRS finding. *See* Mot. at 16–17. But such "questions go to the first step in a Contracts Clause merits analysis, not standing." *Iten*, 81 F.4th at 990. The violation occurs at the transfer of funds, which the statute mandates. *See* E2SHB 2034 § 105(1). Subsequent remedial measures bear only on whether the impairment was *substantial*. *Isaacson v. Mayes*, 84 F.4th 1089, 1097 (9th Cir. 2023) ("[S]tanding in no way depends on the merits" (quotations omitted)). In any event, as shown in section III(B) below, Defendants' argument is wrong on the merits.

**d. Plaintiffs' injury is caused by Defendants and is redressable.**

Plaintiffs' injury is traceable to Defendants' acts. E2SHB 2034 requires the Director of the DRS to direct the State Treasurer to transfer LEOFF funds out of the Plan, and Plaintiffs allege that this transfer violates their contractual rights. ¶¶ 23–24, 50–55, 72–75; E2SHB 2034 § 105. Both officials are named as Defendants in their official capacity. And Plaintiffs' injury is redressable: they seek to enjoin the transfer and declare it as unconstitutional. ¶¶ 57–63, 76–77.

**2. The Contract Clause claim is prudentially ripe for adjudication.**

Prudential ripeness considers: "(1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration." *Flaxman v. Ferguson*, 151 F.4th 1178, 1188 (9th Cir. 2025) (quotations omitted). Plaintiffs need not prove both. *Id.* at 1189.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**a. Plaintiffs' claim is fit for adjudication.**

No further events or factual developments must transpire to adjudicate Plaintiffs' claim. Section 105(1) of E2SHB 2034 leaves no room for discretion: "[T]he state treasurer *shall* transfer" the billions of dollars at issue. (Emphasis added.) The fundamental Contract Clause question is legal because the terms of Plaintiffs' contractual rights and Defendants' obligations appear on the face of the law, the alleged unlawful violation is the transfer, and the State's own actuarial projections identify the risk now.

Nor do Defendants' musings that "the statute may well be amended" defeat ripeness. *See Cardenas v. Anzai*, 311 F.3d 929, 933–34 (9th Cir. 2002). Should the State amend, repeal, or decline to enforce E2SHB 2034, Defendants may argue mootness. *See Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019). But speculation in a brief does not make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 719–20 (2022).

The same is true of the IRS review Defendants invoke as a shield. Mot. at 16–17. Another body's interpretation of E2SHB 2034's compliance with a different law—not the Contract Clause—has no bearing on Plaintiffs' claim. Moreover, E2SHB 2034's "compliance" provision requires only that any adverse findings and recommendations "be promptly submitted to the governor and the appropriate [legislative] committees." 2026 Wash. Sess. Laws, ch. 261, § 109.

Finally, section 108 of E2SHB 2034 provides that "[a]ny claim filed challenging the validity of sections 101 through 108 of this act not filed before December 31, 2027, is forever barred, if not already barred by an otherwise applicable statute of limitations." Defendants do not even try to explain why Plaintiffs' claim is not ripe when E2SHB 2034 requires legal challenges to be filed by the end of 2027.

**b. Plaintiffs face substantial hardship if their claims are not adjudicated.**

Plaintiffs dedicated their lives to serving Washington, and their financial security is now uncertain. E2SHB 2034 casts a cloud over personal savings and family plans, and it multiplies



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

that uncertainty eightfold. ¶ 61. That risk—and the "peace of mind" sacrificed—is a hardship this District has held as a sufficient injury. *See Maneman*, 2026 WL 884985, at *9. And the "hardship prong of prudential ripeness dovetails, in part, with the constitutional consideration of injury." *Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 840 (9th Cir. 2024) (quotations removed).

Defendants would require Plaintiffs to focus on "a series of future . . . events" that would precede any diminished benefits, Mot. at 18, but Plaintiffs should not be required to watch for such contingencies. Their injury is the "*additional* . . . *conditions*, or procedures that impair the [Plan's] obligations." *Iten*, 81 F.4th at 988 (emphases added).

Plaintiffs also face irreversible hardship. Defendants argue that the claim ripens only once the risk of underfunding actualizes—but by then immunity would bar any meaningful relief. Sovereign immunity prevents retrospective injunctive relief that requires payment of money from the state treasury, even if state officials are the party of record. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Here, the only way to remedy underfunding—or to return transferred assets—would be to direct the State to return money to LEOFF 1. *Cf. Valdes v. Cory*, 139 Cal. App. 3d 773, 789 (1983) ("[A] court of this state is powerless to compel the Legislature to appropriate such sums or to order payment of the indebtedness.").

Defendants' theory of ripeness would have Plaintiffs wait until their claim is spoiled.

### B. Plaintiffs state a valid Contract Clause claim.

#### 1. Courts assess three elements in resolving a claim under the Contract Clause for modification of a public retirement fund.

In *Keating*, the Ninth Circuit explained the elements of a Contract Clause claim with respect to a public retirement fund. The plaintiffs claimed that "Nevada's termination of the right of public employees to withdraw their pension contributions without penalty constituted an unconstitutional impairment of contractual obligations and violated state law." 903 F.2d at 1224–25. The Court stated that "we must determine (1) whether Nevada's public employee pension statutes create contractual obligations, (2) whether the 1983 amendments to the legislation



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

substantially impaired the State's contractual obligations, and (3) whether the impairment was reasonable and necessary to serve an important public purpose." *Id*. at 1226.

The Court held that Nevada's law violated the federal Contract Clause. The Court first explained that "[u]ndoubtedly, the amendments impair contractual obligations by terminating the State's obligation to allow public employees to withdraw pension contributions without penalty. However, the Nevada Supreme Court has explained that public employees' contractual pension rights are subject to reasonable modification." *Id*. at 1227. The Court then explained that the "State cannot justify impairing its contractual obligations to public employees by pointing to advantages accrued by former employees." *Id.* The Court held that the "elimination of the right of public employees to withdraw pension contributions without penalty, like the law postponing retirement in *Public Employees' Retirement Board*, substantially impaired the State's contractual obligations." *Id*.; *see Pub. Emps.' Ret. Bd. v. Washoe Cnty.*, 96 Nev. 718, 722 (1980) ("[T]he legislature acted unreasonably and unnecessarily, because there was no evidence that the change was essential to maintain the system's integrity or flexibility.").

The Ninth Circuit also held that the Nevada law was not "reasonable and necessary to serve an important public purpose." 903 F.2d at 1228 (quoting *U.S. Tr. Co. v. New Jersey*, 431 U.S. 1, 25 (1977)). The Court explained that "Nevada should not have interfered with the refund right of public employees when it was looking for ways to fund an increase in post-retirement benefits. States are not free to consider substantial contractual impairments on a par with other policy alternatives." *Id.*

*Keating* establishes that in assessing a State law affecting public retirement benefits under the federal Contract Clause, courts consider State laws concerning the permissible modifications of such laws. As shown below, E2SHB 2034 does not permit the State to withdraw billions of dollars from the LEOFF 1 Plan and deposit it in the general fund, particularly when E2SHB 2034 does not provide *any* benefit to the Plan in return. Thus, as in *Keating*, Washington is "not free to consider substantial contractual impairments on a par with other policy alternatives." *Id.*


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

### 2. Plaintiffs allege a valid claim for violation of the federal Contract Clause.

#### a. Plaintiffs have vested contractual rights to funding of retirement benefits under LEOFF 1.

"Washington law is clear that the contractual obligation to fund a retirement system arises from the employment relationship when the employee's right to the retirement benefit exists at the outset of the employment relationship." *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 222 (2002). In addition, retirees and employees "have vested contractual rights to the systematic funding of the retirement system to maintain actuarial soundness." *Retired Pub. Emps. Council of Wash. v. Charles*, 148 Wn.2d 602, 625 (2003) ("*RPEC*"). The Court in *RPEC* cited *Weaver*, stating that the "*Weaver* court, in holding that the governor's actions would result in an insufficiency of funds needed to pay promised benefits, stated that members and retirees have a vested contractual pension right 'to a retirement system actuarially designed through systematic funding to meet present and future pension liabilities.'" *Id.* (quoting *Weaver*, 80 Wn.2d at 478). Here, Defendants agree that "Plaintiffs have a right to their defined benefits and to an actuarially sound pension system." Mot. at 19.

#### b. Plaintiffs adequately allege that E2SHB 2034 substantially impairs the State's contractual obligations.

In assessing whether a state law substantially impaired a contractual relationship, the Supreme Court "has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819. Consideration of those factors demonstrates that E2SHB 2034 substantially impairs the State's contractual obligations. Plaintiffs first demonstrate that they sufficiently allege substantial impairment even without considering whether E2SHB 2034 renders LEOFF 1 actuarially unsound. But Plaintiffs then demonstrate that, in any event, they sufficiently allege actuarial unsoundness.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

**(1) Removing billions of dollars from LEOFF 1 will substantially impair the State's contractual obligations without assessing actuarial unsoundness.**

Under the three *Sveen* factors, Plaintiffs adequately allege that E2SHB 2034 substantially impairs the State's contractual obligations by requiring Defendants to transfer billions of dollars, without any benefits to LEOFF 1 members. *Sveen* does not require that all three factors apply in order to find substantial impairment, but all three apply here.

*First*, E2SHB 2034 undermines the contractual bargain enjoyed by LEOFF 1 members. In *Washington Education Ass'n v. Washington Department of Retirement Sys*tems, 181 Wn.2d 233, 246 (2014), the Court explained that "Plan 1 members are bound by the terms of their employment contract. *See Jacoby* [*v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 916 (1970)] ('Where a private pension plan creates a contractual obligation between employer and employee, the rights and obligations of the parties must be measured by the terms of the contract under the ordinary rules of contractual construction.')." *Id*. at 246. The Court held that "the legislature could not have been more explicit in reserving the power to amend the UCOLA [Uniform Cost of Living Adjustment] statute and disclaiming any grant of contractual rights. The legislature's inclusion of the reservation clause in the 1995 UCOLA statute therefore does not violate any vested rights of the Plan 1 employees." *Id*. at 247.

Here, in contrast, ordinary rules of contractual construction demonstrate that E2SHB 2034 undermines the contractual bargain enjoyed by LEOFF 1 members. The State did *not* reserve the power to change the LEOFF 1 Plan by unilaterally withdrawing billions of dollars to fund a budget deficit, without providing *any* comparable benefits to Plan members. The State knows how to reserve its rights, as it did in *Washington Education Ass'n*, but nothing in the LEOFF 1 Plan or ordinary rules of contractual construction allows the State to unilaterally raid the Plan to pay down the State's budget deficit, relying on actuarial estimates. *See Jones v. Best*, 134 Wn.2d 232, 240 (1998) ("[O]ne party may not unilaterally modify a contract."). Defendants cannot cite a single case in which a court allowed the diversion of *any* amount from a public retirement fund for non-fund purposes.



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Further, Defendants acknowledge that "the LEOFF 1 fund must be used for the exclusive benefit of plan members and beneficiaries." Mot. at 24. The Internal Revenue Code, which applies to LEOFF 1, states that to "constitute a qualified trust under this section," it must be "impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be (within the taxable year or thereafter) used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries." 26 U.S.C. 401(a); *accord*, Wash. Admin. Code § 415-02-756 ("No assets of the retirement system may be used for or diverted to a purpose other than the exclusive benefit of the members and their beneficiaries at any time prior to the satisfaction of all liabilities with respect to members and their beneficiaries.").

Defendants erroneously argue that "federal exclusive benefit rule provisions expressly authorize termination and restatement of qualified governmental plans such as LEOFF 1 to recapture surplus funds. *See* 26 C.F.R. § 1.401-2(b)(1)." *See* Mot. at 24. Section 1.401-2 does no such thing. Section 1.401-2(a) explains that "[u]nder section 401(a)(2) a trust is not qualified unless under the trust instrument it is impossible (in the taxable year and at any time thereafter before the satisfaction of all liabilities to employees or their beneficiaries covered by the trust) for any part of the trust corpus or income to be used for, or diverted to, purposes other than for the exclusive benefit of such employees or their beneficiaries." Section 1.401-2(b)(1) provides that the State can "reserve the right to recover at the termination of the trust, *and only at such termination*, any balance remaining in the trust which is due to erroneous actuarial computations during the previous life of the trust." (Emphasis added.) The regulation states that if "a trust has accumulated assets of $1,000,000 *at the time of liquidation*," and "*[u]pon such liquidation* it is found that $950,000 will satisfy all of the liabilities under the plan," the "surplus of $50,000 arises, therefore, because of the difference between the amounts actuarially determined and the amounts actually required to satisfy the liabilities." *Id.* (emphasis added.)

Section 1.401-2 does not refer to "restating" a trust, let alone allow the State to avoid the requirements of IRS section 401(a)(2) by terminating and restating LEOFF 1. Yet Defendants claim that the "federal exclusive benefit rule provisions *expressly* authorize termination and



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

restatement of qualified governmental plans such as LEOFF 1 to recapture surplus funds. *See* 26 C.F.R. § 1.401-2(b)(1).” *See* Mot. at 24 (emphasis added). Nothing in section 1.401-2 supports Defendants’ argument.

The two cases cited by Defendants do not support their argument. *See* Mot. at 25. In *Washington-Baltimore Newspaper Guild Local 35 v. Washington Star Co*., 555 F. Supp. 257, 262 (D.D.C. 1983), *aff’d w/o opinion*, 729 F.2d 863 (D.C. Cir. 1984), the district court held that the Star “did not violate ERISA by claiming the Plan’s surplus assets upon termination of the Plan in 1981.” Unlike here, that plan was fully liquidated, not terminated and restated. Defendants also misleadingly state that “[c]ourts uniformly hold that the exclusive benefit rules do not limit the recapture provisions. *E.g., Borst*, 36 F.3d at 1320–21.” Mot. at 24. *Borst* did not involve the “termination and restatement” of a retirement fund. Instead, the Fifth Circuit explained that “both the Tax Code and ERISA require exclusive benefit language *and* contemplate that an employer may recover surplus assets after all plan liabilities are satisfied . . . .” *Borst v. Chevron Corp.*, 36 F.3d 1308, 1320 (5th Cir. 1994). Defendants confuse the “recapture” of funds *after* a fund is liquidated with “termination and restatement” of a fund, which does *not* liquidate a fund or trigger recapture rights under federal and state law. Indeed, allowing the State and others to avoid the requirements of both IRS section 401(a)(2) and Wash. Admin. Code § 415-02-756 merely by restating a retirement plan would be absurd and is not permitted by any statute, court decision, or regulatory authority. Thus, E2SHB 2034 “undermines the contractual bargain” between the State and LEOFF 1 members by requiring Defendants to transfer billions of dollars from the Plan to the States’ general fund.

*Second*, E2SHB 2034 interferes with LEOFF 1 Plan members’ reasonable expectations. Nothing in the 1969 legislation or case law would have made the withdrawal of billions of dollars foreseeable to Plaintiffs. The only reasonable expectation is that the State will comport with its duty to use LEOFF 1 funds for the exclusive benefit of plan members and beneficiaries. *See Heights Apartments, LLC v. Walz*, 30 F.4th 720, 729 (8th Cir. 2022) (finding substantial impairment under *Sveen* because “nothing in Minnesota law or Supreme Court precedent would have made the extent and reach of the [Executive Orders] foreseeable to [plaintiff]”). The State



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

ignores that removing billions of dollars would severely injure Plan members' peace of mind. *See, e.g.*, *Maneman*, 2026 WL 884985, at *9 ("[A]nother obvious benefit of a secure annuity is that it affords the retiree 'a sense of security' and 'peace of mind' that they 'will be provided a set amount of money for the entirety of [their] life, no matter how long [they] live[ ] and despite external market factors.'" (1st alteration added) (citation omitted)).

*Third*, E2SHB 2034 prevents LEOFF 1 members from safeguarding or reinstating their rights. This lawsuit is the only means those members have to safeguard their rights. Defendants claim that LEOFF 1 members lack Article III standing to bring this matter, but they ignore that once billions of dollars are removed from LEOFF 1, sovereign immunity will bar a later lawsuit by LEOFF 1 members for reinstatement of those amounts. *See* § III(A)(2)(b), above.

**(2) Plaintiffs adequately allege that E2SHB 2034 substantially impairs the State's contractual obligations by making the LEOFF 1 Plan actuarially unsound.**

Proof of actuarial unsoundness is not required to demonstrate that the State substantially impaired the contractual rights of LEOFF 1 Plan members by withdrawing billions of dollars to be used for purposes unrelated to the Plan. But in any event, Plaintiffs adequately allege that E2SHB 2034 makes LEOFF 1 actuarially unsound. Washington's Office of the State Actuary acknowledges that reducing the amounts in the Fund to approximately 110% of liabilities would put it at substantial risk of falling below 100 percent funding. Investments in LEOFF 1 are made by the Washington State Investment Board ("WSIB"). ¶ 9. In 2009, the WSIB had a *negative* 22.84% return. *Id.* Moreover, the Chief Executive Officer of WSIB stated in the 2025 WSIB Annual Report that "[m]arkets have become more complex, and we are seeing tectonic economic and market shifts playing out in real time." *Id.* She explained that "[w]aning global trade will have far-reaching effects on economic growth, inflation, and labor markets." *Id.* Nonetheless, E2SHB 2034 requires the reduction of funds in the LEOFF 1 Plan to only 110% of *estimated* current obligations, without concomitant benefits for the LEOFF 1 members. *Id.*

Of particular importance, the Washington Office of the State Actuary issued a "fiscal note" in March 2026 about E2SHB 2034. ¶ 61. The note states that E2SHB 2034 "increases the potential of future state contributions if adverse experience occurs because, after the asset


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

transfers to the CCA/PFSA [Climate Commitment Account and Pension Funding Stabilization Account, respectively], there will be fewer assets in the Restated LEOFF 1 Fund." *Id.* It also states: "Within our 2,000 economic simulations that vary investment returns, we found the portion of scenarios where a UAAL [i.e., Unfunded Actuarial Accrued Liability] emerges by Fiscal Year (FY) 2045 increased from 5% to 40% as a result of this bill; this represents the risk of required UAAL payments by the state increasing by a factor of roughly 8 (or eightfold) over this 20-year timeframe." *Id.* The fiscal note similarly states that "over the next 20 years roughly 800 of the 2,000 economic scenarios resulted in the emergence of a UAAL under this bill; whereas under current law, about 100 scenarios resulted in a UAAL." *Id.*

The eightfold increase in risk to Plaintiffs and the Class members—increasing the risk from five percent to forty percent—shows that E2SHB 2034 is an unconstitutional violation of the Contract Clause rights of Plaintiffs and the Class members. Instead of being protected by money in their fund, plan members will have to rely on the State to fund the shortfalls in 800 out of 2,000 scenarios calculated by the Office of the State Actuary. ¶ 62. That change in actuarial soundness establishes substantial impairment under *Sveen* because it: (1) undermines Plaintiffs' contractual bargain; (2) interferes with their reasonable expectation that the Plan would remain sound without the withdrawal of billions of dollars; and (3) prevents Plaintiffs from safeguarding or reinstating his rights. *See Sveen*, 584 U.S. at 819.

*RPEC* demonstrates that Plaintiffs adequately allege substantial impairment because of the risks to their retirement money. In *RPEC*, the plaintiffs "petitioned for a writ of mandamus against the director of the Department of Retirement Systems (Director)." 148 Wn.2d at 608. They alleged that the Director "unlawfully collected employer contributions to the retirement system at the lower rate adopted by the legislature in Engrossed House Bill (EHB) 2487 (Laws of 2000, 2d Sp. Sess., ch. 1) in contravention of the statutorily required rates and methodology." *Id.* The trial court granted summary judgment for the Director.

The Supreme Court affirmed summary judgment. The Court addressed "whether the legislation substantially impairs the contractual relationship. A contract is impaired by a statute which alters its terms, imposes new conditions, or lessens its value." *Id.* The plaintiffs argued


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

that "lower contribution rates could reduce earnings on pension assets as well as create a reduced likelihood the plan could finance future benefit improvements." *Id.* at 626. But they made "no showing of how much the lower contribution rates would lessen the value of the retirement system, if at all." *Id*. at 627.

Here, in contrast, Plaintiffs sufficiently allege that E2SHB 2034 will render LEOFF 1 actuarially unsound. The Office of the State Actuary issued a "fiscal note" in March 2026 about E2SHB 2034, stating that "over the next 20 years roughly 800 of the 2,000 economic scenarios resulted in the emergence of a UAAL under this bill; whereas under current law, about 100 scenarios resulted in a UAAL." ¶ 61. Moreover, this case is at the pleading stage, unlike *RPEC*, which was decided on summary judgment. *See Stone v. State*, 191 N.C. App. 402, 415 (2008) (affirming summary judgment under the Contract Clause for plaintiffs who challenged funding changes for a retirement system and distinguishing *RPEC* on the ground that "the State's actuary in the case before us" explained that funding "cannot be reduced effective February 1, 2001 in an actuarially sound manner").

Defendants nonetheless erroneously contend that the SAC should be dismissed at the pleading state despite the findings of the State Actuary. Defendants first incorrectly argue that LEOFF 1 "will remain overfunded, since the Treasurer is directed to transfer to the restated LEOFF defined benefit retirement fund an amount equaling 110% of the *actuarial present value* of its fully projected benefit liabilities." Mot. at 20 (emphasis added). Purloining billions of dollars in assets from LEOFF 1 and turning it into an actuarially-based plan impairs the rights of Plaintiffs to a sound retirement plan. As Plaintiffs allege, the State "does not acknowledge that the Plaintiffs and Class members did not agree to funding only allegedly *actuarially* sufficient resources," let alone to the removal of billions of dollars. *Id.*

Defendants undermine E2SHB 2034 and their motion when they contend that "Plaintiffs emphasize that the Treasurer's transfer of surplus funds into the pension surplus holding account increases the actuarial risk that the fund may fall below 100% funded status at some point in the future, should equity markets substantially underperform compared with the State's actuarial assumptions. *But this is pure speculation*." Mot. at 21–22 (citation omitted) (emphasis added).


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Defendants' claim that predictions by the Washington Office of the State Actuary are "pure speculation" is nonsense. If the State Actuary's estimates are "pure speculation," E2SHB 2034 is based *entirely* on actuarial speculation, rendering it an unconstitutional impairment of Plaintiffs' right to a sound retirement fund.

Defendants further assert, to no avail, that "even if the markets perform worse than the Office of the State Actuary assumes, the State is obligated to make additional contributions to return the restated LEOFF system to fully funded status. *See* 2026 Wash. Sess. Laws, ch. 261, § 502(2)(d) . . . ." Mot. at 22. Yet again, Defendants ignore that LEOFF 1 members did not agree to funding based on periodic state actuary determinations, with billions of dollars removed from the Fund and no comparable benefits provided. Defendants' argument that LEOFF 1 members must rely on the State's *promise* to pay future benefits is absurd in light of the State's plan to withdraw billions of dollars from LEOFF 1, which violates their duty to use LEOFF 1 funds solely for the benefit of its members and beneficiaries.

The Washington Supreme Court rejected that same argument in *Weaver*, in which the governor unlawfully withheld funds from a teachers' retirement system "on the grounds that available state revenues were insufficient to meet projected expenditures under general fund appropriations for the 1969–71 biennium." 80 Wn.2d at 462. The Governor contended that "subsequent legislatures can restore to the pension reserve fund any transfers therefrom which might affect its actuarial soundness." *Id*. at 475. Despite that argument, the Court issued a writ of mandamus requiring the Governor to restore the funds at issue to the retirement system. Here, similarly, Defendants' contention that the legislature is obligated to fund future benefits does not satisfy the dictates of the Contract Clause. *See Valdes*, 139 Cal. App. 3d at 790 ("[I]f it is sound state fiscal policy to balance the budget by diminishing the PERS reserve against deficiencies by 187 million dollars, how much more prudent would be larger and more frequent incursions into the reserve for similar purposes unrelated to the benefit of the members of the trust? The question is of course rhetorical." (citation omitted)).

Finally, Defendants' argument is not supported by *Sveen*, which held that that the statute at issue "reduces to a paperwork requirement (and a fairly painless one, at that): File a form and


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the statutory default rule gives way to the original beneficiary designation." 584 U.S. at 822. "In cases going back to the 1800s, this Court has held that laws imposing such minimal paperwork burdens do not violate the Contracts Clause." *Id. Sveen* did not involve a contract to which the State was a party. And the withdrawal of billions of dollars from a retirement fund (without *any* benefits to the vast majority of Plan members) cannot seriously be compared to the minimal paperwork at issue in *Sveen*.

**c. The FAC adequately alleges that E2SHB 2034 was adopted for an impermissible purpose under the Contract Clause.**

**(1) Decisions by the Supreme Court, the Ninth Circuit, and the Washington Supreme Court establish that the State lacks a legitimate purpose for enacting E2SHB 2034.**

The State's intended use of billions of dollars to offset a budgetary shortfall is not a permissible purpose under the Contract Clause. The State does not cite a single case that allows the State to withdraw that money and place it in the State's general fund to be used for purposes unrelated to the needs and rights of LEOFF 1 members. In contrast, several cases support Plaintiffs' claim.

In *Sveen*, the Supreme Court explained that if there is "a substantial impairment, the inquiry turns to whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" 584 U.S. at 819 (quoting *Energy Rsrvs. Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–12 (1983)). For public pensions and retirement funds, "'the modification must bear some material relationship to the purpose of the pension system and its successful operation; and any disadvantage to employees must be accompanied by comparable new advantages.'" *Keating*, 903 F.2d at 1227 (quoting *Pub. Emp. Ret. Bd.*, 96 Nev. at 722); *see also Hester v. State*, 197 Wn.2d 623, 636 (2021) (the "modification of pension benefits must be for the purpose of ensuring the continued flexibility and integrity of the pension system, otherwise they are invalid," and "any impairment must create and provide comparable new advantages" (citation and internal quotation marks omitted)).

Moreover, "Defendants bear the burden of proving that the impairment was reasonable and necessary because '[t]he burden is placed on the party asserting the benefit of the statute



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

only when that party is the state.'" *Univ. of Haw. Pro. Assembly v. Cayetano*, 183 F.3d 1096, 1106 (9th Cir. 1999). And a "heightened level of judicial scrutiny is appropriate when the government is a contracting party." *Apartment Ass'n of Los Angeles Cnty., Inc. v. City of Los Angeles*, 10 F.4th 905, 913 (9th Cir. 2021) (citing *U.S. Trust Co. v. New Jersey*, 431 U.S. at 25–26).

Plaintiffs' claim is supported by *U.S. Trust*, in which the Supreme Court stated that "[a]s with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." 431 U.S. at 25-26. The Court explained that a "governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *Id*. at 26. In a footnote to that quotation, the Court cited *Lynch*, 292 U.S. at 580, as holding that the "need for money is no excuse for repudiating contractual obligations." *U.S. Trust*, 431 U.S. at 26 n.25. Similarly here, the State cannot purloin LEOFF 1 funds to spend that money for other important purposes.

Plaintiffs' claim is also supported by *Cayetano*, in which the Ninth Circuit affirmed a preliminary injunction against the operation of a statute that "would allow the State to postpone by a few days, at six different times, the dates on which state employees are to be paid." 183 F.3d at 1099. The Court addressed whether "the impairment was 'both reasonable and necessary to fulfill an important public purpose,' such that the impairment is justifiable." *Id*. at 1106. The defendants claimed that "the pay lag is reasonable and necessary in light of Hawaii's budgetary crisis." *Id*. at 1107. But the Court noted that an "impairment may not be considered necessary if there is 'an evident and more moderate course' of action that would serve Defendants' 'purposes equally well,' because '[t]he contract clause of the Federal Constitution limits the ability of a State, or subdivision of a State, to abridge its contractual obligations without first pursuing other alternatives.'" *Id.*(citations omitted). Moreover, "we are 'less deferential to a state's judgment of


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

reasonableness and necessity when a state's legislation is self-serving and impairs the obligations of its own contracts.'" *Id.* (quoting *Condell v. Bress*, 983 F.2d 415, 418 (2d Cir. 1993)).

The Court held that "Defendants have not established that Act 355 was both necessary and reasonable. As the district court stated, '[a]lthough perhaps politically more difficult, numerous other alternatives exist which would more effectively and equitably raise revenues.'" *Id.* The Court stated that "[o]ther options available to Defendants were a federal maximization project (to obtain additional reimbursements from the federal government), additional budget restrictions, the repeal of tax credits, and the raising of taxes. Defendants have not explained why it is reasonable and necessary that the brunt of Hawaii's budgetary problems be borne by its employees." *Id.* For the same reasons, E2SHB 2034 violates the Contract Clause, because the State has not provided any basis for finding that eviscerating LEOFF 1 is necessary to close a general budgetary shortfall.

**(2) Defendants' argument that the Act serves a legitimate purpose is unsupported by the law or facts.**

Defendants make two erroneous arguments in claiming that the Act serves a legitimate purpose under the Contract Clause. *First*, they erroneously assert that "the State has a significant and legitimate purpose in the responsible use of fiscal resources." Mot. at 27. But Defendants do not cite any authority for their cursory proposition, which is inconsistent with *U.S. Trust* and *Cayetano*. To use the words of *Cayetano*, Defendants "have not explained why it is reasonable and necessary that the brunt of [Washington's] budgetary problems be borne by" LEOFF 1 members. 183 F.3d at 1107.

*Second*, Defendants misleadingly argue that a "'legitimate state interest is the elimination of unforeseen windfall profits.' *Energy Rsrvs. Grp.*, 459 U.S. at 412 (citing *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 31 n. 30 (1977)) . . . ." Mot. at 27. That argument is a red herring because Plaintiffs do not claim a right to *any* profits, let alone windfall profits. And the two cases cited by Defendants do not support their argument. In *Energy Reserves Group*, 459 U.S. at 412, the Court stated that "[o]ne legitimate state interest is the elimination of unforeseen windfall profits." (Citing *U.S. Tr. Co.*, 431 U.S. at 31 n.30.) In *U.S. Trust*, the Court stated that "[t]his


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

Court previously has regarded the elimination of unforeseen windfall benefits as a reasonable basis for sustaining changes in statutory deficiency judgment procedures. These changes were adopted by several States when unexpected reductions in property values during the Depression permitted some mortgagees to recover far more than their legitimate entitlement." *U.S. Tr. Co.*, 431 U.S. at 31 n.30. In contrast, Plaintiffs here do not seek more than their legitimate entitlements.

Nor is Defendants' "windfall" argument supported by its citation to a case in which the court stated that it "must determine who is the lawful claimant to approximately four million dollars of surplus assets in an employee benefit plan terminated in 1981 by The Washington Star Company . . . ." *Washington-Baltimore*, 555 F. Supp. at 257 (D.D.C. 1983). Plaintiffs here do not claim that they (or their beneficiaries) are entitled to all the money in the LEOFF 1 Fund, either now or when the Fund is eventually fully terminated.

Defendants' argument that Plaintiffs have no right to "surplus investment earnings" of the LEOFF 1 plan is misguided. Defendants rely on a series of cases that concern the distribution of residual money in a fund after the fund is fully terminated and no plan member has a right to any further benefits. As discussed above, the State has recognized a contractual right to have funds remain in that fund and used only for that fund. That is a wholly separate issue from whether the State or LEOFF 1 members (or their beneficiaries) are entitled to any remaining funds after the members are paid 100% of their benefits. Plaintiffs offer no opinion on that irrelevant issue.

All of the cases cited by Defendants are inapposite. See Mot. at 21–22. Not a single case supports Defendants' proposition that the State may withdraw *any* money from an existing retirement fund and use it for purposes unrelated to paying pension benefits. In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), the Supreme Court interpreted ERISA provisions relating to a private retirement plan and did not consider a Contract Clause claim. The Court explained that the plaintiffs "claim that Hughes violated ERISA by amending the Plan to provide for an early retirement program and a noncontributory benefit structure." *Id*. at 435. The Court explained two critical respects in which that case differed from the case before this court. First, "Hughes suspended its contributions in 1987, which it has not resumed." *Id*. at 436. Thus, unlike


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

the State's intention to withdraw funds here, Hughes did not withdraw any funds from the retirement plan. Second, "Respondents do not dispute that Hughes used fund assets for the sole purpose of paying pension benefits to plan participants." *Id*. at 442. The Court held that because "respondents do not allege that Hughes used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, Hughes could not have violated the anti-inurement provision under ERISA § 403(c)(1)." *Id*. at 443. *Hughes* is nothing like this case. Even if the same ERISA rules applied here, the defendant in *Hughes* did not withdraw funds and use them for purposes other than paying benefits to beneficiaries.

Defendants' argument is also undermined by their citation to *Koster v. City of Davenport*, 183 F.3d 762 (8th Cir. 1999). *See* Mot. at 21. The Washington Supreme Court in *RPEC* quoted *Koster* as follows: "[A] defined benefit plan entitles the members to a predetermined distribution upon retirement and to an actuarially sound plan to ensure that the plan is adequately funded to meet those distribution requirements. It does not entitle them to any use of the contributions other than to ensure the above entitlements are met." 148 Wn.2d at 616 (quoting *Koster*, 183 F.3d at 767). In *Koster*, the state did not remove money from a retirement fund for non-fund purposes but instead allowed cities to use "plan assets to offset the cities' future contributions to the statewide plan." 183 F.3d at 764. The court held that "[i]f there is any impairment to the members' alleged contractual rights, we conclude that it is not central to the claimed contract because it does not diminish the value of the members' benefits *or compromise the soundness of the plan*." *Id*. at 768 (emphasis added). Unlike here, there was no evidence that the State's own actuary found that the statute at issue substantially increased the risks to the actuarial soundness of the fund. And in all other cases cited by Defendants, the fund at issue was fully terminated, and the ploy of "termination and restatement" was not at issue.

## IV. CONCLUSION

Defendants' motion to dismiss should be denied.


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX

I certify that this memorandum contains 8,388 words, in compliance with the Local Civil Rules.

Dated: August 11, 2026

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

By: */s/ Craig R. Spiegel*
Craig R. Spiegel
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
craigs@hbsslaw.com

By: */s/ Moses Jehng*
Moses Jehng
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
moses.jehng@hbsslaw.com

*Attorneys for Plaintiff(s)*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF recipients.

DATED this 11th day of August, 2026.

*s/ Steve W. Berman*
Steve W. Berman



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE (206) 623-0594 FAX