The Honorable Jamal N. Whitehead

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JOSEPH DAWSON, et al.,<br>Plaintiffs,<br>v.<br>KATHRYN LEATHERS, et al.,<br>Defendants. | NO. 2:26-cv-01469-JNW<br>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS<br>NOTE ON MOTION CALENDAR: AUGUST 18, 2026<br>ORAL ARGUMENT REQUESTED |



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. Plaintiffs Cannot Establish Justiciability .......... 1

1. Plaintiffs allege no injury in fact .......... 1

2. Prudence supports dismissal for lack of ripeness .......... 5

B. Plaintiffs Fail to State a Claim that E2SHB 2034 Substantially Impairs Annuitants' Contractual Rights .......... 6

1. Termination and restatement will not impact annuitants' contractual right to receive their defined benefits .......... 6

2. Plaintiffs do not, and have no basis to, claim surplus investment assets .......... 7

3. E2SHB 2034 will not render annuitants' retirement plan actuarially unsound .......... 9

4. Reallocation of excess profits is a legitimate purpose .......... 11

III. CONCLUSION .......... 13




ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

## TABLE OF AUTHORITIES

### Cases

*Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937 (9th Cir. 2021) .... 5

*Bowles v. Wash. Dep't of Ret. Systems*, 847 P.2d 440 (Wash. 1993) .... 7

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .... 3

*Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983) .... 11, 12

*Hester v. State*, 483 P.3d 742 (Wash. 2021) .... 7

*Iten v. Los Angeles*, 81 F.4th 979 (9th Cir. 2023) .... 3, 4, 5

*Maneman v. Weyerhaeuser Co.*, 2026 WL 884985 (W.D. Wash. 2026) .... 4, 5

*Pub. Emps.' Ret. Bd. v. Washoe County*, 615 P.2d 972 (Nev. 1980) .... 7

*Ret. Pub. Emps. Council of Wash. v. Charles*, 62 P.3d 470 (Wash. 2003) .... 9, 10

*State of Nev. Employees Ass'n v. Keating*, 903 F.2d 1223 (9th Cir. 1990) .... 7

*Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020) .... 1, 2, 3, 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) .... 1, 4

*Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2023) .... 5

*U.S. Trust Co. v. New Jersey*, 431 U.S. 1 (1977) .... 11, 12

*Univ. of Hawaii Pro. Assembly v. Cayetano,* 183 F. 3d 1096 (9th Cir. 1999) .... 11, 12

*Wash. Educ. Ass'n v. Wash. Dep't of Ret. Systems*, 332 P.3d 439 (Wash. 2014) .... 7



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

*Weaver v. Evans*,
495 P.2d 639 (Wash. 1972) ........ 6, 10

**Statutes**

2026 Wash. Sess. Laws, ch. 261 ........ 3, 6, 9, 10

Wash. Rev. Code § 41.26.040(3) ........ 7

**Regulations**

26 C.F.R. § 1.401-2(b)(1) ........ 8, 9

Wash. Admin. Code § 415-02-756 ........ 7

Wash. St. Reg. 10-24-099 (filed Dec. 1, 2010) ........ 7

**Other Authorities**

E. Thomas Veal & Edward R. Mackiewicz,
*Pension Plan Terminations* (2d ed. 1998) ........ 8

IRS,
*Internal Revenue Manuals*, *Part 7* § 7.11.1.30(19),
https://www.irs.gov/irm/part7/irm_07-011-001#id105 ........ 8

John H. Abbott,
*Legislating Reversions: A Mistaken Path Leading to Drastic Results*,
26 San Diego L. Rev. 1109 (1989) ........ 8

Thomas Murray & R. Alex Acosta,
*Reclaiming Fiduciary Duty: ESG,*
*Wall Street Fee Minimalism,and the Case for Pension Divestment*,
79 SMU Law Rev. Forum 107 (2026). ........ 3



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

# I. INTRODUCTION

A party invoking the jurisdiction of this Court must show concrete injury. Plaintiffs instead ask this Court to adjudicate the constitutionality of a hypothetical future default on a fully funded, State-guaranteed pension obligation that has not occurred, will never occur, and—if it did occur—would happen only after a chain of contingencies that no Plaintiff has plausibly alleged will come to pass. Moreover, Plaintiffs do not dispute that the plan benefits after Engrossed Second Substitute House Bill (E2SHB) 2034 remain exactly the same as the benefits paid or promised to members prior to E2SHB 2034. Accordingly, Defendants are not required to provide any "comparable new advantages." Dkt. # 16 at pp. 8, 17, 23–24. Plaintiffs' lawsuit should be dismissed for both lack of standing and failure to state a claim.

# II. ARGUMENT

## A. Plaintiffs Cannot Establish Justiciability

### 1. Plaintiffs allege no injury in fact

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 430–31 (2021). To establish standing, a plaintiff must demonstrate that they "suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). Plaintiffs have not alleged and cannot show such an injury, and thus may not invoke the jurisdiction of this Court. *See id.* at 541, 547.

Nowhere in their Amended Complaint do Plaintiffs allege injury. The closest they come is to claim that E2SHB 2034 puts the LEOFF 1 fund "at substantial risk of falling below 100% funding" (Dkt. # 9 at p. 5 ¶ 9) and puts their benefits at greater risk (Dkt. # 9 at p. 5 ¶ 10; Dkt. # 9 at pp. 14–16 ¶¶ 57, 58, 60, 62). This is far less than what the Supreme Court in *Thole* held to be constitutionally ***in***sufficient.



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

In *Thole*, two retired participants in a defined-benefit retirement plan filed a putative class action for mismanagement of the plan and the resulting loss of some $750 million. *See* 590 U.S. at 540–41. Despite these losses, the Court held:

> the plaintiffs lack Article III standing for a simple, commonsense reason: They have received all of their vested pension benefits so far, and they are legally entitled to receive the same monthly payments for the rest of their lives.

*Id*. at 547.

In a defined-benefit plan (such as LEOFF 1), the Court explained, retirees receive fixed monthly payments that "do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Id*. at 540. It is "the employer, not plan participants, [that] receives any surplus left over after all of the benefits are paid; the employer, not plan participants, is on the hook for plan shortfalls." *Id.* at 543. Participants "possess no equitable or property interest in the plan." *Id.* In such circumstances, the outcome of the lawsuit cannot affect future benefit payments:

> If [plaintiffs] were to *lose* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny less. If [plaintiffs] were to *win* this lawsuit, they would still receive the exact same monthly benefits that they are already slated to receive, not a penny more.

*Id.* at 541 (emphasis in original). The Court concluded: "The plaintiffs therefore have no concrete stake in this lawsuit." *Id.* The same thing must be said here.

The *Thole* Court also discussed an *amicus* argument that standing should be found if the plan was so egregiously mismanaged "that it substantially increased the risk that the plan and the employer would fail and be unable to pay the participants' future pension benefits[,]" as well as the plaintiffs' own allegation that the plan was underfunded for a time. *Id.* at 546. The Court held that "a bare allegation of plan underfunding does not itself demonstrate a substantially increased risk that the plan and the employer will both fail." *Id.* Here, Plaintiffs do not and cannot



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

plausibly allege that LEOFF 1 and the State of Washington will both fail. *Cf. id.* at 546 n.2 (any increased-risk-of-harm standing may not be available if benefits are fully guaranteed by the federal Pension Benefit Guarantee Corporation); 2026 Wash. Sess. Laws, ch. 261, § 101 (the State remains "the ultimate guarantor of" LEOFF 1 annuitants' benefits). What's more, reliance "on a highly attenuated chain of possibilities[] does not satisfy the [standing] requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 410 (2013).

This Court should reject Plaintiffs' assertion that cases like *Thole* that discuss pension plans governed by ERISA are inapplicable to non-ERISA governmental plans like LEOFF 1. ERISA is generally *more stringent* than the pre-ERISA Internal Revenue Code provisions that govern qualified governmental plans, and public plans often look to ERISA as a source of "best practices for fund governance." Thomas Murray & R. Alex Acosta, *Reclaiming Fiduciary Duty: ESG, Wall Street Fee Minimalism, and the Case for Pension Divestment*, 79 SMU Law Rev. Forum 107, 113 (2026).

This Court should also reject Plaintiffs' suggestion that standing rules differ for claims of constitutional impairment. In the case upon which they chiefly rely, the Ninth Circuit stated that injury in fact is the "'first and foremost of standing's three elements.'" *Iten v. Los Angeles*, 81 F.4th 979, 984 (9th Cir. 2023) (alterations omitted) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The required injury for a claim of constitutional impairment, like any other claim, must be "concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical." *Id.* (cleaned up). To be concrete, an injury "must actually exist." *Id.* (quoting *Spokeo*, 578 U.S. at 340).

The reason that the plaintiff in *Iten* had standing is that the eviction moratorium he was challenging gave him a concrete stake in the outcome of his case. *See id.* at 992; *see also id.* at 988 (moratorium altered "the remedies the parties had agreed to . . . at the time they entered into the lease."). The moratorium gave tenants an affirmative defense against eviction and a year-long



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

forbearance period to pay overdue rent; it prohibited the collection of late fees and interest for overdue rent; and it imposed criminal and civil penalties for non-compliance. *Id.* at 982.

The Ninth Circuit recounted the history of the Contracts Clause from its origins through the nineteenth century. *See id*. at 986–87. It did so "because mortgage moratoria were, from the beginning, at the heart of the Contracts Clause." *Id.* at 987–88. A law changing the terms the parties previously agreed to "is the quintessential example of what the Contracts Clause was designed to prohibit." In this case, by contrast, E2SHB 2034 changes neither rights nor remedies for LEOFF 1 plan participants. The benefits that annuitants are entitled to prior to E2SHB 2034 will not change, with the exception of vesting a handful of previously unvested members (an undisputed benefit to those members). Standing in this case is governed by the holding in *Thole*, and *Thole* requires dismissal of Plaintiffs' lawsuit.

Instead of pleading any change in benefit entitlements, Plaintiffs merely assert that E2SHB 2034 threatens their "peace of mind." That is not a cognizable claim. *Cf. TransUnion*, 594 U.S. at 417 (asserted harm must have "a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts"). Plaintiffs cite *Maneman v. Weyerhaeuser Co.*, 2026 WL 884985 (W.D. Wash. 2026), but that case does not support their claim. There, an employer swapped a private annuity for the benefits payable under a pension plan. The plaintiffs alleged their employer breached its fiduciary duty by choosing a high-risk private annuity provider. Judge Evanson found standing, though it was a close question, because plaintiffs adequately pleaded that the choice of a flaky annuity company resulted in a less valuable annuity than they would have had if the defendants had chosen a suitably safe annuity. This sufficed "to show a present, economic injury for purposes of Article III standing." *Id*. at *6.

As Judge Evanson explained, the *Maneman* plaintiffs'

> theory of injury [was] not based on the diminution in value of the plan's assets (which, *Thole* makes clear, participants have "no equitable or property interest in") but of *their annuities*. There is no dispute that [p]laintiffs have a "legally protected interest" in



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

> receiving their "fixed monthly payment[s]." . . . It is the decline in value of *that* interest—not of the underlying plan assets—that supports standing here.

2026 WL 884985, at *7 n.3 (emphases in original) (citations omitted). Here, Plaintiffs' only claim relates to plan assets. Under *Thole* and *Maneman*, they lack standing to sue.

**2. Prudence supports dismissal for lack of ripeness**

Even if Plaintiffs had alleged the kind of injury that is required to establish justiciability, their claim should be dismissed on the basis that it is prudentially unripe. *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2023). This case is not fit for judicial resolution and does not warrant intervention to alleviate any substantial hardship. *See Ass'n of Irritated Residents v. U.S. Env't Prot. Agency*, 10 F.4th 937, 944 (9th Cir. 2021) (setting forth two prongs of prudential ripeness).

That Plaintiffs' claims are not currently fit for court intervention follows from the features of the statute they challenge. E2HSB 2034 maintains actuarial soundness, anticipates being amended if needed to qualify under federal law after Internal Revenue Service (IRS) review of the restated plan, requires additional funding if needed, and mandates reversion again if needed—all to ensure that plan members receive their benefits. At best, Plaintiffs' claims are speculative and premature.

Plaintiffs' claim that they face a substantial hardship due to E2HSB 2034 also falls flat. Asserted loss of "peace of mind" does not make a case ripe, and the cases Plaintiffs rely on do not hold otherwise. Although Judge Evanson in *Maneman* referenced loss of peace of mind due to a change in benefit provider, that was a tag-along point after holding that economic injury established Article III standing. *See* 2026 WL 884985 at *4–9. Likewise, Plaintiffs' fleeting reference to *Iten* is unavailing. There, the Ninth Circuit recognized that if the obligations of one's contract have been "taken away or materially lessened," a plaintiff could state a claim. *Iten*, 81 F.4th at 992. Plaintiffs do not, and cannot, plead such harm.



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

Additionally, Plaintiffs' claim that sovereign immunity would bar any later suit "requir[ing] payment of money from the state treasury" is contradicted by their own discussion of another Contracts Clause case in which "the Court issued a writ of mandamus requiring the Governor to restore the funds at issue to the retirement system." Dkt. # 16 at pp. 14, 23 (discussing *Weaver v. Evans*, 495 P.2d 639 (Wash. 1972)).

Plaintiffs' suit is prudentially unripe.

### B. Plaintiffs Fail to State a Claim that E2SHB 2034 Substantially Impairs Annuitants' Contractual Rights

On the merits, Plaintiffs fail to state a claim for substantial impairment of LEOFF 1 annuitants' contractual rights. For this reason, too, this Court should dismiss their Amended Complaint.

#### 1. Termination and restatement will not impact annuitants' contractual right to receive their defined benefits

While LEOFF 1 annuitants have a contractual right to their defined benefits, those benefits are untouched by E2SHB 2034. The restated LEOFF plan that will replace LEOFF 1 upon its termination includes identical benefit provisions. *See* 2026 Wash. Sess. Laws, ch. 261, §§ 303–48 (mirroring LEOFF 1 provisions codified at Wash. Rev. Code §§ 41.26.030–.3902, as well as adding a provision to vest the handful of members not currently vested in LEOFF 1). During the transition, "all benefits, as they existed prior to termination and restatement, shall continue without interruption." 2026 Wash. Sess. Laws, ch. 261, § 102.

Plaintiffs contend that the reversion of surplus LEOFF 1 funds will substantially impair annuitants' contract rights because (1) LEOFF 1 does not include a clause expressly reserving power to the State to revert surplus funds, and (2) the legislation will not provide any new "comparable benefits" to LEOFF 1 plan members. Dkt. # 16 at p. 17. But a reservation clause is simply a way to preserve the State's ability to change the pension system in a way that would otherwise constitute a substantial impairment of contract. *See Wash. Educ. Ass'n v. Wash. Dep't*



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

*of Ret. Systems*, 332 P.3d 439 (Wash. 2014). Where, as here, the challenged legislation does not substantially impair annuitants' contract rights, no reversion clause is necessary.

The same is true of "comparable benefits." Washington state court cases interpreting Contracts Clause challenges to public pensions have concluded that "[o]nce an employee begins work, . . . modifications *reducing pension levels* must be counterbalanced with increases in pension levels[.]" *Bowles v. Wash. Dep't of Ret.* Systems, 847 P.2d 440, 446 (Wash. 1993) (emphasis added). "This is based on a theory of mutual assent; assent to a legislative modification *negatively impacting pension benefits* is presumed if that legislation also provides a comparable or greater benefit." *Hester v. State*, 483 P.3d 742, 748–49 (Wash. 2021) (emphasis added). Similarly, in the cases Plaintiffs cite for the proposition that any modification to a pension plan must be accompanied by an additional benefit, defendants—unlike here—were attempting to change benefits or entitlements. *See, e.g.*, *State of Nev. Employees Ass'n v. Keating*, 903 F.2d 1223 (9th Cir. 1990) (termination of public employees' ability to withdraw pension contributions without penalty.); *Pub. Emps.' Ret. Bd. v. Washoe County*, 615 P.2d 972, 975 (Nev. 1980) (removal of certain employees from eligibility for early retirement benefits).

Here, E2SHB 2034 takes pains to ensure that annuitants' pension benefits are wholly unaffected by the termination, reversion, and restatement. Because no pension benefit is negatively impacted, there is no need to enact additional, "comparable benefits" to offset a benefit reduction and thereby avoid a contractual impairment.

**2. Plaintiffs do not, and have no basis to, claim surplus investment assets**

Unable to rebut the statutory analysis in Defendants' motion, *see* Dkt. # 15 at pp. 25–26, Plaintiffs appear to have completely abandoned their Amended Complaint's reliance on Wash. Rev. Code § 41.26.040(3). Plaintiffs try to pivot to the regulation discussed in Defendants' motion, Wash. Admin. Code § 415-02-756, which was enacted for the explicit purpose of "ensur[ing] compliance with" federal tax requirements concerning qualified governmental plans. Wash. St. Reg. 10-24-099 (filed Dec. 1, 2010). In doing so, Plaintiffs concede that the exclusive



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

benefit language applicable to LEOFF 1, adopted long after they ceased to make any contributions to it, merely ensures compliance with federal tax law. That regulation does not give them the contractual right they need to allege an impairment claim.

Federal law "permit[s] the employer to reserve the right to recover at the termination of the trust, and only at such termination, any balance remaining in the trust which is due to erroneous actuarial computations during the previous life of the trust." 26 C.F.R. § 1.401-2(b)(1). Plaintiffs suggest that the federal regulation permits reversion only in a scenario where the trust is terminated but not restated. Dkt. # 16 at pp. 7–8, 18–19. Plaintiffs misunderstand how pension plan termination works.

"Terminated plans *are normally replaced*, directly or indirectly." E. Thomas Veal & Edward R. Mackiewicz, *Pension Plan Terminations* 8 (2d ed. 1998) (emphasis added). One well-recognized method of termination is "termination/reestablishment," in which "first, the defined benefit plan is terminated; second, the sponsor takes the reversion [of surplus assets]; and third, a similar defined benefit plan or a defined contribution plan is established." John H. Abbott, *Legislating Reversions: A Mistaken Path Leading to Drastic Results*, 26 San Diego L. Rev. 1109, 1127–28 (1989) (cautioning against legislative efforts that would limit plans' ability to revert surplus assets). Termination/reestablishment has been expressly recognized in Internal Revenue Service publications. *See, e.g.*, IRS, *Internal Revenue Manuals*, *Part 7* § 7.11.1.30(19), https://www.irs.gov/irm/part7/irm_07-011-001#id105 (last visited Aug. 17, 2026) (describing "termination/reestablishment").

There is nothing objectionable in this procedure. The plan sponsor must "satisf[y] . . . all liabilities with respect to employees and their beneficiaries" prior to reverting surplus assets, and one way to do so is by establishing fully funded comparable defined benefits, whether through a purchased annuity or a newly established pension plan. 26 C.F.R. § 1.401-2(b)(1). Thus, while LEOFF 1 is subject to the federal exclusive benefit rule, that rule does not contemplate that the plan would never be subject to a termination/reestablishment. Just the opposite: the rule is written


ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

specifically "to permit" such an event. 26 C.F.R. § 1.401-2(b)(1). What annuitants do have is a right to their defined benefits—which they will still receive under E2SHB 2034. And should the IRS determine that E2SHB 2034's reversion is not compliant with federal tax law, any such reverted surplus funds "must" be returned by the State "with interest." 2026 Wash. Sess. Laws, ch. 261, § 109(3).

LEOFF 1's termination/reestablishment will have zero effect on annuitants' contractual right to receive their defined benefits. Plaintiffs therefore fail to state a Contracts Clause claim.

**3. E2SHB 2034 will not render annuitants' retirement plan actuarially unsound**

Plaintiffs also fail to state a claim that E2SHB 2034 will render their pension plan actuarially unsound. Plaintiffs' arguments on this point are self-contradicting. They "do not claim that they (or their beneficiaries) are entitled to all the money in the LEOFF 1 Fund" beyond those funds needed to pay their benefits, and "do not claim a right to *any* profits, let alone windfall profits." Dkt. # 16 at pp. 26–27. Yet they simultaneously seem to argue that they are entitled to have *all* surplus investment funds remain in the LEOFF 1 fund—regardless of how disproportionately large the fund grows compared to its actuarial needs. Perplexingly, they accuse E2SHB 2034 of "turning [LEOFF 1] into an actuarially-based plan" and argue they "did not agree to funding only allegedly *actuarially* sufficient resources." Dkt. # 16 at p. 22 (emphasis in original).

This makes no sense. *All* pension plans are actuarially based; otherwise, they could not function. Annuitants have a "vested contractual pension right 'to a retirement system actuarially designed through systematic funding to meet present and future pension liabilities'"—nothing less, nothing more. *Ret. Pub. Emps. Council of Wash. v. Charles*, 62 P.3d 470, 483 (Wash. 2003) (quoting *Weaver*, 495 P.2d at 650).

E2SHB 2034 ensures annuitants will continue to have a plan that is "actuarially designed . . . to meet present and future liabilities." *Id.* The bill does so by transferring into the



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

restated LEOFF plan "110 percent of the actuarial present value of the fully projected benefits of plan 1," based on the state actuary's determination of "the actuarial present value of fully projected benefits." 2026 Wash. Sess. Laws, ch. 261, § 105(1)-(2).

The bill also ensures annuitants will continue to have "systematic funding" to meet all plan liabilities. *Charles*, 62 P.3d at 483. Every two years, "[i]f the state actuary determines an unfunded liability exists in the restated [LEOFF] system," the State "shall adopt" a "state contribution . . . based on a systematic actuarial funding policy that would fully amortize the unfunded actuarial accrued liability over reasonable periods using reasonable assumptions and methods as determined by the state actuary." 2026 Wash. Sess. Laws, ch. 261, §§ 502(2), (2)(d); *see also* 2026 Wash. Sess. Laws, ch. 261, § 501(2) (stating legislative intent "[t]o fund any unfunded actuarial accrued liability in the restated [LEOFF] system with a state contribution based on a systematic actuarial funding policy that would fully amortize the unfunded actuarial accrued liability over reasonable periods using reasonable assumptions and methods").

Together with the initial *overfunding* of the restated LEOFF system, this mandatory backstop—requiring state contributions in the unlikely event the restated fund dips below a fully funded status—is fatal to Plaintiffs' claim. Plaintiffs rely on *Charles* to argue that they have sufficiently pled the new bill will render their pension plan actuarially unsound. Dkt. # 16 at pp. 21–22 (discussing 62 P.3d 470 (Wash. 2003)). But like the pension plan members in *Charles*, Plaintiffs cannot show that the challenged legislation "will hinder the retirement system such that the benefits promised them will not be payable." 62 P.3d at 484. Accordingly, their Contracts Clause claim fails as a matter of law. *Id.*

Plaintiffs' reliance on *Weaver* is similarly misplaced. *See* Dkt. # 16 at p. 23. *Weaver* involved a scenario where the governor initially refused to transfer legislatively appropriated state contributions to a pension fund, with the result that the retirement system would have insufficient assets to pay members' benefit payments that biennium. 495 P.2d at 641–42. In other words, the governor tried to short-circuit the pension plan's systematic funding mechanism.



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

E2SHB 2034 contemplates nothing of the sort. If another governor attempted something similar in the future regarding E2SHB 2034, then Plaintiffs' proper recourse *at that time* would be to obtain "a writ of mandamus requiring the Governor to restore the funds at issue to the retirement system." Dkt. # 16 at p. 23 (discussing *Weaver*).

In short, Plaintiffs cannot state a claim that E2SHB 2034 will render their pension plan actuarially unsound. Nor can Plaintiffs plausibly claim that they have a contractual right to demand that all surplus funds—including those far above the needs of the retirement system—will remain in LEOFF 1 in perpetuity. E2SHB 2034 requires that the restated LEOFF system start with more funding than is needed to meet its actuarial needs. And if the funds become actuarially insufficient in the future, the bill requires the State to systematically fund it with additional State contributions to bring the system back to fully funded status. Plaintiffs cannot state a claim that E2SHB 2034 will render their pension plan actuarially unsound.

**4. Reallocation of excess profits is a legitimate purpose**

Plaintiffs contend that E2SHB 2034 lacks a legitimate purpose because, they say, the State may withdraw monies from an overfunded defined benefit plan only after termination. Plaintiffs misunderstand termination and ignore that E2SHB 2034 restates the plan obligations of LEOFF 1 without change. Plaintiffs also cite cases inapplicable to the undisputed facts here. Finally, Plaintiffs contend that the State's legitimate purpose of "elimination of unforeseen profits," *Energy Reserves Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412 (1983), does not apply here because Plaintiffs make no claim to such profits. Plaintiffs' arguments do not aid their cause.

First, Plaintiffs' cases turn on wholly dissimilar facts. In *U.S. Trust Co. v. New Jersey*, 431 U.S. 1 (1977), the Court held that state actors may not take money and violate contracts because they need funds. But Defendants are not taking money from Plaintiffs, nor are they violating any contract. In *University of Hawaii Professional Assembly v. Cayetano,* 183 F. 3d 1096 (9th Cir. 1999), the court invalidated a proposed conversion of a state payroll system that



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

would have delayed employee pay. Relying on a long line of cases pertaining to paycheck delays, the court found that delaying payments to state employees, in violation of historic practices, did not establish an important public purpose. *Id.* at 1105, 1107. Here, by contrast, Plaintiffs will receive the very same defined benefits on the very same timetable under E2SHB 2034 that they do today.

Plaintiffs concede, as they must, that the State has a legitimate interest in recovering windfall profits, an interest that applies in many different contexts. *See*, *e.g.*, *Energy Reserve Grp.*, 459 U.S. 400 (limiting price increases in natural gas contracts); cases cited in *U.S. Trust Co.*, 431 U.S. at 31 (adopting a statute of limitations to restrict speculators' gains); *id.* at 31 n. 30 (changing statutory deficiency judgment procedures to eliminate unforeseen windfall profits). But Plaintiffs say that this interest "is a red herring" (Dkt. # 16 at p. 26) because they are not seeking excess profits in the LEOFF 1 fund.

Far from constituting a defense, it is a fatal admission for Plaintiffs to state that they "do not claim a right to *any* profits" and are "not claim[ing] that they (or their beneficiaries) are entitled to all the money in the LEOFF 1 Fund, either now or when the Fund is eventually fully terminated." Dkt. # 16 at pp. 26, 27 (emphasis original). Since Plaintiffs agree (as they must) that they are not entitled to anything beyond their defined benefits, they have no basis on which to allege that Defendants are "purloining billions of dollars" by reverting an unforeseen surplus of investment earnings. Dkt. # 16 at p. 22. In contrast to the circumstances giving rise to the cases Plaintiffs cite, E2SHB 2034 will cause no delay and impair no contractual right. Under E2SHB 2034, LEOFF 1 will continue to be overfunded. If, for whatever reason, the restated plan becomes underfunded, the State must top it up. As is the case now, the State will remain the ultimate guarantor of the LOEFF 1 fund and of Plaintiffs' benefits. The purpose underlying E2SHB 2034 is plainly legitimate.



ATTORNEY GENERAL OF WASHINGTON
Revenue and Finance Division
7141 Cleanwater Drive SW
P.O. Box 40123
Olympia, WA 98504-0111
360-753-5515

## III. CONCLUSION

The Court should dismiss Plaintiffs' Amended Class Action Complaint for Declaratory and Injunctive Relief, both for lack of subject matter jurisdiction and for failure to state a claim.

DATED this 18th day of August 2026.

I certify that this memorandum contains 4,200 words, in compliance with the Local Civil Rules.

NICHOLAS W. BROWN
Attorney General of Washington

*/s/ David C. Moon*
DAVID C. MOON, WSBA #54546
ANDREW J. KRAWCZYK, WSBA #42982
AARON J. FICKES, WSBA #51584
Assistant Attorneys General
7141 Cleanwater Dr. SW
P.O. Box 40123
Olympia, WA 98504-0123
360-753-5515
David.Moon@atg.wa.gov
Andrew.Krawczyk@atg.wa.gov
Aaron.Fickes@atg.wa.gov

*Attorneys for Defendants*

K&L GATES LLP

*/s/ Robert B. Mitchell*
ROBERT B. MITCHELL, WSBA #10874
PHILLIP M. GUESS, WSBA #26765
PETER A. TALEVICH, WSBA #42644
Attorneys at Law
925 Fourth Ave., Ste. 2900
Tel: 206-623-7580
Fax: 206-623-7022
Rob.Mitchell@klgates.com
Phillip.Guess@atg.wa.gov
Peter.Talevich@klgates.com

*Attorneys for Defendants*